[No. A110274. First Dist., Div. One. Jan. 24, 2006.]

ROSE M. BELL et al., Plaintiffs and Respondents, v.
FARMERS INSURANCE EXCHANGE, Defendant and Appellant.

**COUNSEL**

Paul, Hastings, Janofsky & Walker, Paul Grossman, Robert P. Kristoff, Paul W. Cane, Jr., and Summer Stinson for Defendant and Appellant.

Rudy, Exelrod & Zieff, Steven G. Zieff, Kenneth J. Sugarman; Altshuler, Berzon, Nussbaum, Rubin & Demain, Michael Rubin, Scott A. Kronland and Laura P. Juran for Plaintiffs and Respondents.

**OPINION**

**SWAGER, J.**—This fourth appeal in a complex class action is confined to a single postjudgment order denying the defendant's motion to modify the calculation of prejudgment interest in the judgment. We affirm.

### PROCEDURAL BACKGROUND

The plaintiffs are former or current claims representatives working for Farmers Insurance Exchange (hereafter FIE), who filed this action October 2, 1996, seeking unpaid overtime compensation under Labor Code section 1194. They alleged that FIE had wrongfully refused to pay overtime compensation for a period beginning on October 1, 1993. In a ruling on a motion for summary adjudication, the trial court upheld the plaintiffs' contention that their employee class was subject to the overtime regulations of the Industrial Welfare Commission. We affirmed the trial court's ruling in our decision in *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 [105 Cal.Rptr.2d 59].

Following the adjudication of the plaintiffs' nonexempt status, the trial court conducted a series of hearings on management of the damages phase of the trial and referred certain matters to a special master. The proceedings led to a brief jury trial in which expert witnesses presented testimony regarding the statistical determination of damages. On July 10, 2001, the jury returned a special verdict finding that unpaid time-and-a-half overtime compensation owed to the class was $88,798,871.12 and unpaid double-time compensation was $1,210,337. The trial court entered a judgment on the verdict, which incorporated by reference a plan of distribution of the damages submitted by the plaintiffs and an "order re plan of distribution" that modified the plan in certain respects. Pursuant to provisions in the plan of distribution, the judgment awarded prejudgment interest in the "maximum amount" of $32,303,048 based on a 10 percent interest rate provided in Civil Code section 3289 for the recovery of damages for breach of contract.

In a subsequent appeal, we affirmed the judgment in most respects, reversing only the judgment for unpaid double-time compensation and directing that the plan of distribution be modified to give the claims administrator more power to investigate possibly excessive claims. (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715 [9 Cal.Rptr.3d 544].) Following remand of the case, FIE filed a motion for a nunc pro tunc order to determine the amount of prejudgment interest or, in the alternative, to correct clerical error in the judgment. The motion claimed that prejudgment interest should be calculated by using the 7 percent interest rate specified by California Constitution, article XV, section 1. The trial court denied the motion in an order entered January 24, 2005, that did not reach the merits of FIE's legal argument but instead ruled that the motion was barred on procedural grounds.

## DISCUSSION

FIE based its motion to amend the prejudgment interest provisions of the judgment on the contention that a 10 percent prejudgment interest rate was first authorized by the enactment of Labor Code section 218.6, effective January 1, 2001, which incorporated the interest rate provided by Civil Code section 3289 for breach of contract actions. Prior to this date, FIE maintains that the applicable prejudgment interest rate was the 7 percent rate provided by California Constitution, article XV, section 1, for forbearance in the payment of money, which, the parties agree, would apply in the absence of a legislative act specifying another rate. (*Michelson v. Hamada* (1994) 29 Cal.App.4th 1566, 1585–1586 [36 Cal.Rptr.2d 343].) FIE relies on the canon of statutory interpretation "that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) Applying the 7 percent rate to the period after accrual of the plaintiffs' right to unpaid wages to December 31, 2000, and the 10 percent rate following the enactment of Labor Code section 218.6, FIE calculates the judgment overstated the amount of prejudgment interest by approximately $8 million.

Plaintiffs opposed the motion on three separate procedural grounds. First, the trial court lacked jurisdiction to amend the judgment; second, the proposed amendment did not correct a clerical error; and, third, FIE waived its claim of error. Furthermore, plaintiffs argue that the prejudgment interest was properly calculated by using the 10 percent rate applying to breach of contract actions. They argue that the inclusive language of Labor Code section 218.6 would support a retroactive application of the statute, but the language actually reflects a legislative intent to clarify the law. Before section 218.6 expressly required the use of the breach-of-contract rate for prejudgment interest, this rate was still the appropriate rate for unpaid wage claims because of the contractual nature of the employment relationship.

We will briefly discuss the procedural issues and then address on its merits the question of the appropriate prejudgment interest rate.

A. *Jurisdiction Following Remand*

■ FIE argues that the court retained jurisdiction to reconsider the prejudgment interest rate under the terms of the judgment in the case. It acknowledges the applicable rule: "When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void." (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 [242 P.2d 1]; see *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982 [128 Cal.Rptr.2d 403].) Nevertheless, FIE contends that the judgment set only the maximum amount of interest and thus preserved trial court jurisdiction to adopt a lower interest rate.

The record does not support this contention. The judgment filed September 24, 2001, adopted the plaintiffs' plan of distribution except as modified in a separate order re plan of distribution. The plan of distribution provided that the claims administrator would separately calculate the prejudgment interest of each claimant, employing a 10 percent interest rate: "Once the class members' backpay claims shares are calculated for each class member who submits a Claim Form, the Claims Administrator will add 10% periodic prejudgment interest through the date of judgment for each class member, to determine the prejudgment interest claim share for that class member." The order re plan of distribution provided that the judgment "shall include prejudgment interest in the maximum amount of $32,303,048," plus daily interest. Reflecting a recognition that the amount of interest would be contingent on the nature of the claims presented to the claims administrator, the order further provided: "If the total amount of prejudgment interest determined by the Claims Administrator as payable to all claiming class members under the Plan of Distribution is less than the total prejudgment interest awarded [$32,303,048] by the Court as set out in the preceding sentence, however, Farmers may seek to amend the Judgment to allow it to recover the difference (if any) between the total amount awarded by the Court as prejudgment interest and the total lesser amount payable to claiming class members as determined by the Claims Administrator under the Plan of Distribution." The judgment itself incorporated verbatim these provisions in the order re plan of distribution.

We see no ambiguity in this record. The trial court retained jurisdiction to amend the judgment only if the individual calculations of the claims administrator should fall short of the award of prejudgment interest in the maximum amount of $32,303,048. On appeal, we affirmed the judgment except for the portion awarding damages for unpaid double-time hours and remanded the order re plan of distribution for consideration of matters having no connection with the calculation of prejudgment interest. Our decision provided that "[i]n all other respects, the postjudgment orders subject to appeal are affirmed." (*Bell v. Farmers Ins. Exchange, supra,* 115 Cal.App.4th 715, 765, fn. omitted.)[1] We therefore conclude that the trial court properly ruled that it had no jurisdiction to modify the prejudgment interest rate.

## B. *Clerical Error*

■ We see no merit in FIE's claim that the trial court possessed power to amend the prejudgment interest rate provided in the judgment as a clerical error. It is elementary that "[a] court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a *nunc pro tunc* order. [Citation.] It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made." (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 544 [7 Cal.Rptr. 124, 354 P.2d 652].) In *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 117 [89 Cal.Rptr.2d 1], the court elaborated on this point: "The test which distinguishes clerical error from possible judicial error is simply whether the challenged portion of the judgment was entered inadvertently (which is clerical error) versus advertently (which might be judicial error, but is not clerical error). [Citation.] Unless the challenged portion of the judgment was entered inadvertently, it cannot be changed post judgment under the guise of correction of clerical error."

To determine the intentional nature of the judgment provisions regarding prejudgment interest, we need go no further than the hearing on August 13, 2001. In a dialogue with the court, both parties discussed the interest calculation in the judgment, referring to the prejudgment interest rate as 10 percent, and the court itself used this rate in posing hypotheticals to the parties. At the conclusion of the hearing, the trial court stated its intention as to the award of prejudgment interest: "I'm going to find that the interest in this case as an aggregate should not exceed $32,303,048. . . . But I'm going to reserve jurisdiction. Because if at the end of the distribution period the total is not claimed, then I don't think it's fair to charge interest on the money that went unclaimed. And so it would be my inclination to make an adjustment at that time."

---

[1] The issue of the rate of prejudgment interest was not raised in any prior appeal.

The judgment precisely carried out the intent of the trial court's ruling by incorporating by reference the plan of distribution and order re plan of distribution. Since the record does not disclose an inadvertent error as was the case in *Pettigrew v. Grand Rent-A-Car* (1984) 154 Cal.App.3d 204 [201 Cal.Rptr. 125], the judgment cannot be changed by a motion nunc pro tunc "under the guise of correction of clerical error." (*Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp., supra,* 75 Cal.App.4th 110, 117; see also *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890–891 [67 Cal.Rptr.2d 407].)

## C. *Waiver*

FIE does not seriously address the trial court's finding that it waived any objection to the 10 percent interest rate of Labor Code section 218.6 and Civil Code section 3289. The record abundantly supports the finding of waiver. In April 2001, the trial court ordered the parties to address pending legal issues, including the prejudgment interest rate, in a conference before the special master. During the conference later that month, FIE's counsel promised to inform plaintiff's counsel of FIE's position regarding the prejudgment interest rate. In a letter to plaintiffs' counsel dated April 16, 2001, FIE's counsel agreed with plaintiffs' contention that the breach-of-contract rate applied: "With regard to the issue of interest, we agree with you that interest should be calculated at a rate of 10% per year from the date any wages were due. Labor Code § 218.6; Civil Code § 3289." The parties later acknowledged in status conference statements that the issue of the rate of prejudgment interest had been resolved, and plaintiffs' counsel filed a copy of the letter dated April 16, 2001, in his motion for the prejudgment interest award.

Subsequent proceedings consistently reflect FIE's acquiescence in the use of the 10 percent interest rate. The pretrial report of FIE's expert witness on economics and financial matters used this interest rate. Following trial, FIE submitted a brief on prejudgment interest calculation that presupposed the application of the 10 percent rate of Labor Code section 218.6. As noted *ante,* at the hearing on August 13, 2001, concerning the form of the judgment, FIE again acknowledged that this rate was applicable. In its objections to the proposed form of the judgment and the plan of distribution and in its motion for new trial, FIE did not challenge the use of the 10 percent rate. Finally, FIE did not assign error to the use of this interest rate in its prior appeal from the judgment.

## D. *The Appropriate Prejudgment Interest Rate*

While the trial court was obliged to deny FIE's motion to amend the judgment on procedural grounds, we hold that the judgment was also correct

on the merits of the legal issues.[2] The language of Labor Code section 218.6 has an inclusive breadth that supports its retroactive application. The statute provides: "In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable . . . ." We note that rather than stating a rule for the accrual of interest the statute directs "the court" to award interest on "*all* due and unpaid wages" at the contract rate of 10 percent specified by Civil Code section 3289, subdivision (b). The use of the word "all" and the form of the statute as a directive to the court appears to reflect a legislative intent that judicial awards of due and unpaid wages should bear the contract interest rate without exception and hence without regard to when the right to the award accrued.

The language is also compatible with the premise that the Legislature intended the statute to clarify existing law. If previous law called for application of the breach-of-contract interest rate, then the reference to Civil Code section 3289 would also apply to the accrual of prejudgment interest on all claims for unpaid wages without regard to the effective date of the statute. This interpretation avoids the issue of retroactivity. A statute has retroactive effect only when "it substantially changes the legal [consequences] of past events." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 7 [255 Cal.Rptr. 412, 767 P.2d 679].) A legislative clarification establishes the true legislative intent without changing the past legal consequences of the statute as properly understood. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629]; *Martin v. California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71].)

To decide this issue of statutory interpretation, it is enough to observe that strong and persuasive authority favored the application of Civil Code section 3289 even before it was expressly made applicable to unpaid wages with the enactment of Labor Code section 218.6. The legislative history and statutory language further support the conclusion that the Legislature intended the reference to Civil Code section 3289 in Labor Code section 218.6 solely as a clarification of existing law.

■ The plaintiffs' argument for application of the breach-of-contract interest rate is based on the principle that the employment relationship is itself " 'fundamentally contractual' " (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; see also Lab. Code,

---

[2] Although the trial court did not rule on the merits of the legal issue regarding the applicable rate of prejudgment interest, the parties have extensively argued the issue in their briefs.

§ 2750) and the contractual duties of the employer implicitly include performance of mandatory statutory duties, such as the payment of overtime wages. If the statutory duty to pay overtime is incorporated in the contractual relationship of employer and employee, plaintiffs argue that breach of this duty represents a breach of contract, which would call for application of the prejudgment interest rate of Civil Code section 3289. While we have been unable to find precedent directly in point, we do find authority that employs plaintiffs' reasoning in analogous contexts.

In *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481 [171 P.2d 21], a group of 18 employees were discharged by their employer, a defense contractor, on the ground of suspected disloyalty to the United States. The employees sought damages in an action for wrongful discharge, alleging that their discharge violated Labor Code section 1101, subdivision (b), which forbade an employer from "[c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees." Among other defenses, the employer argued that there was no civil right of action for violation of section 1101. Rejecting this argument, the court held: "The contract of employment must be held to have been made in the light of, and to have incorporated, the provisions of existing law. [Citations.] Hence, upon violation of the section, an employee has a right of action for damages for breach of his employment contract." (*Lockheed, supra,* at p. 486; see also *Mallard v. Boring* (1960) 182 Cal.App.2d 390, 395 [6 Cal.Rptr. 171].)

Two other pertinent decisions involve statutory obligations for the payment of wages. The issue in *Hays v. Bank of America* (1945) 71 Cal.App.2d 301 [162 P.2d 679] was whether the plaintiffs failed to file claims in their employer's estate for overtime wages under the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) within the time required by the Probate Code for claims arising from contract or contingent thereon. Holding that the claims came within the bar of the Probate Code the court observed: "There was an implied promise to pay them the wages for overtime work prescribed by section 207 of the Fair Labor Standards Act. . . . We must assume the parties to the contracts of employment knew of the existence of the Fair Labor Standards Act and took into consideration its provisions applicable to hours of work and compensation for overtime service." (*Hays, supra,* at p. 304.)

A more recent Supreme Court decision, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962 [9 Cal.Rptr.2d 92, 831 P.2d 317], addressed the question whether a provision of the Tort Claims Act applied to a suit to recover damages for failure to pay the prevailing wage in a government contract. In a footnote, the court construed an earlier case as expressly avoiding the question

whether workers have a right of action against a contractor who has not agreed to pay the statutorily prevailing wage. The court continued: "However, even if such an action is available, it does not bring the present action within the scope of the Tort Claims Act. Any action by a worker against a contractor for wages must necessarily be based on the worker's contractual relationship with the contractor, for absent an express or implied contractual relationship with the worker, the contractor has no duty to pay that worker any wages, let alone statutory prevailing wages. Thus, a worker's action against an employer for unpaid statutorily required wages sounds in contract." (*Aubry, supra,* at p. 969, fn. 5.)

FIE's arguments rely on the statutory origin of the duty to pay overtime. Most plausibly, it calls our attention to *Aubry v. Goldhor* (1988) 201 Cal.App.3d 399 [247 Cal.Rptr. 205], a decision predating Labor Code section 218.6 holding that the recovery of overtime wages was governed by the three-year statute of limitations for a liability created by statute (Code Civ. Proc., § 338, former subd. (1), now subd. (a)) rather than the two-year statute of limitations for breach of contract not in writing (Code Civ. Proc., § 339, former subd. 1). The *Aubry* decision was recently followed by a federal district court decision, *Medrano v. D'Arrigo Bros. Co. of Cal.* (N.D.Cal. 2000) 125 F.Supp.2d 1163, holding that an action for unpaid overtime under state and federal law is governed by the three-year limitations period.

We see no relevance, however, in the other authority that FIE cites. In particular, *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109 [104 Cal.Rptr.2d 392, 17 P.3d 749] is wholly distinguishable. There, the court held that the award of backpay under Labor Code section 132a to an employee wrongfully denied reinstatement because of an industrial injury should include prejudgment interest under Civil Code section 3287, subdivision (a). The decision contains no discussion at all of the applicable rate of interest—section 3287 is silent on the interest rate—but it would be distinguishable even if it had some explicit bearing on the present case. Section 132a is a remedial provision under the Workers' Compensation Act, which entitles an employee to backpay for periods that were not worked, and thus the recovery of backpay under the statute lacks the connection with an employment relationship present in an action for wages earned but unpaid.

Similarly, *Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252 [90 Cal.Rptr. 169, 475 P.2d 201] upheld the payment of prejudgment interest under Civil Code section 3287 in an action to recover retroactive pay increases to which

the plaintiffs were entitled under provisions of the municipal charter and ordinances. The opinion did not discuss the applicable interest rate and, in any event, it would have questionable relevance to the employment relationship in the private sector. *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740 [118 Cal.Rptr.2d 629] concerns Medi-Cal reimbursements and has no apparent connection with recovery of unpaid overtime. *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 371 [127 Cal.Rptr.2d 516, 58 P.3d 367], has nothing to say about the applicable rate of interest, but merely cites Labor Code section 218.6 as a statute authorizing the California Labor Commissioner to award interest on wage order claims.

On balance, we find the authority construing the employment contract as incorporating statutory duties more persuasive than the analogy to the choice of statute of limitations. At the very least, the argument for the application of the breach-of-contract prejudgment interest rate of Civil Code section 3289 carries sufficient logic to support the assumption that the Legislature regarded the reference to section 3289 in Labor Code section 218.6 as a clarification of existing law. This interpretation of legislative intent is confirmed by the legislative history and the statutory language.

The legislative history of Labor Code section 218.6 indicates that the statute was enacted as a housekeeping measure that was primarily directed at the prejudgment interest rate applying to administrative proceedings before the California Labor Commissioner. The interest rate applying to such administrative proceedings is governed by a separate statute, Labor Code section 98.1, which formerly referenced the "adjusted annual rate established pursuant to Section 19269 of the Revenue and Taxation Code." Section 19269 was in fact repealed in 1993 and the definition of an "annual adjusted rate" was inserted in Revenue and Taxation Code section 19521. The continued cross-reference in Labor Code section 98.1 to a repealed statutory provision represented an obvious legislative oversight. (See *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 574–575 [38 Cal.Rptr.2d 221].)

This statutory defect in Labor Code section 98.1 was addressed in Assembly Bill No. 2509, (Bill No. 2509) which comprehensively revised the state wage-and-hour law, with particular emphasis on procedural and enforcement provisions. In addition to enacting Labor Code section 218.6, Bill No. 2509 also amended Labor Code section 98.1, but instead of simply correcting the erroneous cross-reference, the amended statute provided that administrative awards would earn interest at the breach-of-contract rate provided by Civil

Code section 3289. Since Labor Code section 218.6 expressly made this same rate applicable to civil actions, Bill No. 2509 achieved uniformity between the two statutory provisions.

The analysis of Bill No. 2509 by the Senate Committee on Industrial Relations indicates that the Legislature adopted the breach-of-contract rate for Labor Code section 98.1 because it regarded this rate as the existing rate for civil actions. The enactment of Labor Code section 218.6, which expressly cross-referenced this rate, represented a clarification of the legislative understanding of the law. A legislative analysis states: "The legal rate of interest on unpaid wages due pursuant to an award by the Labor Commissioner is based on a statute which was repealed in 1993. *Under breach of contract provisions of the Civil Code, courts may award interest on wages due at 10%.* [¶] This bill references the Civil Code section for 10% interest for Labor Commissioner awards." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as amended June 26, 2000, p. 2, italics added.)

FIE points to two other documents in the legislative history that mention the proposed Labor Code section 218.6 in a list of changes or revisions to the law,[3] but we do not regard these legislative documents as being inconsistent with the interpretation of the cross-reference to Civil Code section 3289 as a clarification of existing law. Legislative clarifications inevitably involve a revision or change in statutory language.

The language of Labor Code section 218.6 is particularly appropriate in light of this legislative background. If the statute served to clarify the law, it would apply to all awards of unpaid wages, as the statute plainly provided, but the Legislature would have no need to address the prospective or retroactive application of the statute, and the statutory language is in fact silent on this matter.

 We conclude that the trial court properly applied the 10 percent prejudgment interest rate provided by Civil Code section 3289 to the accrual of unpaid wages. The enactment of Labor Code section 218.6 confirmed the propriety of this rate, which was supported by persuasive authority prior to its enactment.

---

[3] See Assembly Committee on Labor and Employment, Third Reading Analysis of Assembly Bill No. 2509 (1999–2000 Reg. Sess.) April 12, 2000, at page 2; Senate Committee on the Judiciary, Analysis of Assembly Bill No. 2509 (1999–2000 Reg. Sess.) at pages 3–4. FIE also cites the Legislative Counsel's Digest of Assembly Bill No. 2509 but misinterprets the document. Referring to *administrative* proceedings, the Legislative Counsel states that the bill "would instead" require use of the breach-of-contract rate. The text does not refer to the use of this rate in civil actions.

## DISPOSITION

The judgment is affirmed.

Marchiano, P. J., and Stein, J., concurred.