[No. A110311. First Dist., Div. One. Mar. 15, 2006.]

ROSE BELL et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent,

**COUNSEL**

Rudy, Exelrod & Zieff, Steven G. Zieff, Kenneth J. Sugarman; Altshuler, Berzon, Nussbaum, Rubin & Demain, Michael Rubin, Scott A. Kronland and Laura P. Juran for Plaintiffs and Appellants.

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., Robert P. Kristoff and Summer Stinson for Defendant and Respondent.

## OPINION

**SWAGER, J.**—This fifth appeal in a complex class action concerns the propriety of postjudgment orders amending a plan of distribution and denying a motion for additional postjudgment interest. We affirm.

### PROCEDURAL BACKGROUND

The plaintiffs are claims representatives of Farmers Insurance Exchange (hereafter FIE), seeking unpaid overtime compensation under Labor Code section 1194. In an earlier appeal, *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 [105 Cal.Rptr.2d 59], we affirmed the trial court's ruling that their employee class was subject to the overtime regulations of the Industrial Welfare Commission. The matter went to a jury trial. On July 10, 2001, the jury returned a special verdict finding that unpaid time-and-a-half overtime compensation owed to the class was $88,798,871.12 and unpaid double-time compensation was $1,210,337. The trial court entered a judgment on the verdict, which awarded plaintiffs prejudgment interest of 10 percent and provided for a plan of distribution of the damages. On appeal, we affirmed the judgment in most respects, reversing only the judgment for unpaid double-time compensation and directing that the plan of distribution be modified in certain minor respects. (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715 [9 Cal.Rptr.3d 544].) In a further appeal, we upheld the trial court's award of prejudgment interest at the rate of 10 percent. (*Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138 [38 Cal.Rptr.3d 306].)

On September 3, 2004, following remand of the case, the trial court entered an order regarding implementation of the judgment, which required FIE to pay the amount of the judgment into a damages fund consisting of an interest-bearing escrow account held in the names of class counsel and a court-appointed claims administrator.[1] The order found that the unpaid balance owing under the judgment as of August 16, 2004, was $158,663,784.85, plus daily postjudgment interest. This sum was to "be paid fully" as follows: FIE had already paid $120,000,000 into the damages fund on August 19, 2004; the "balance of the monies" would be paid on or before March 10, 2005, to the same account.

The order provided that "[d]aily post-judgment interest at 10% will continue to accrue until such Judgment is paid in full and will continue to accrue on those amounts that remain unpaid." Following the initial payment of $120 million, "FIE will continue to pay interest on the unpaid balance . . . at the rate of 10% per year."

---

[1] "[T]he parties . . . jointly stipulated and agreed" to his order.

The claims administrator was required to make the first distribution to class members from the damages fund on March 28, 2005. Shortly before that date, FIE wrote a letter brief dated March 18, 2005, to the trial court asking leave to distribute the fund in a manner that would obviate an unforeseen tax difficulty. It noted that the damages fund was required to have its own employer identification number (EIN) under treasury regulation section 1.468B-2(k)(4). Since FIE maintained a separate EIN for its own payroll, FIE was concerned that the use of two EIN's might have the effect of requiring FIE to pay duplicative payroll taxes from both accounts. As a solution, it asked the court to adopt an amended plan of distribution. FIE would prepare checks for payment of the back wages portion of the judgment directly from its payroll account, paying appropriate employer payroll taxes. Then it would forward the checks to the claims administrator, who would prepare a second set of checks for the interest portion of the judgment and distribute both checks to class members. When the claims administrator determined that a class member had cashed the backpay check or that the funds had been electronically transferred to the class member's account, the claims administrator would reimburse FIE from the damage fund for its payment.

Plaintiffs' counsel strenuously objected to the procedure in a letter to the court dated March 22, 2005, and plaintiffs moved that FIE be required to pay additional postjudgment interest of 10 percent for the period from August 19, 2004 to March 28, 2005, if it were allowed to make payments directly from its payroll account. At a hearing on March 23, 2005, the court granted FIE's request for the alternative method of distribution and denied plaintiffs' motion for additional postjudgment interest. The court issued a formal order to this effect on April 1, 2005.

The record discloses that on March 25, 2005, FIE tendered checks to the claims administrator for the back wage payments and that most of the damage fund was distributed to class members according to schedule on March 28, 2005. On June 16, 2005, the court approved similar procedures for a second distribution of amounts held in reserve pending resolution of various issues. FIE again tendered checks to the claims administrator on June 23, 2005, for the portion of this final distribution that represented back wage payments.

Plaintiffs filed a notice of appeal from the orders entered on March 23, 2005, and April 1, 2005, denying its application for an order requiring FIE to pay 10 percent postjudgment interest through the date of its payment of back wages to class members.

## DISCUSSION

The single issue presented by this appeal is the date when the judgment was satisfied. FIE argues that the judgment was satisfied when it deposited funds into the trust account held in the name of class counsel and the claims administrator; plaintiffs maintain that the judgment was satisfied when actual payment was made to the class members.

We find that the issue calls for a simple commonsense application of Code of Civil Procedure section 685.030, subdivision (d). We begin with the statutory context. Code of Civil Procedure section 685.010, subdivision (a), states the general rule: "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." Code of Civil Procedure section 685.030, subdivision (a), addresses satisfaction of a judgment by writ execution and then addresses in subdivisions (b) and (c) full or partial satisfaction of the judgment by other means. These subdivisions provide: "(b) If a money judgment is satisfied in full other than pursuant to a writ under this title, interest ceases to accrue on the date the judgment is satisfied in full. [¶] (c) If a money judgment is partially satisfied pursuant to a writ under this title or is otherwise partially satisfied, interest ceases to accrue as to the part satisfied on the date the part is satisfied."

The dispositive provision, Code of Civil Procedure section 685.030, subdivision (d), provides: "For the purposes of subdivisions (b) and (c), the date a money judgment is satisfied in full or in part is the earliest of the following times: [¶] (1) The date satisfaction is actually received by the judgment creditor. [¶] (2) The date satisfaction is tendered to the judgment creditor or deposited in court for the judgment creditor. [¶] (3) The date of any other performance that has the effect of satisfaction."

We consider that the provision of subdivision (d)(2) pertaining to "deposit[] in court for the judgment creditor" should be construed to embrace payment of funds in satisfaction of the judgment to the damages fund managed by the claims administrator. We observe that the claims administrator was appointed by the court and made quarterly reports to the court. The court was empowered to appoint a special master to assist it in the detailed supervision of the claims administrator's duties. As the present case illustrates, the court retained full power over the claims administrator's performance of its duties.

We do not think it should make any difference for purpose of Code of Civil Procedure section 685.030, subdivision (d)(2) whether funds are paid directly to the superior court or to a third party appointed and supervised by the court or whether the funds are held in a public account of the county treasurer or in the name of such a third party. While a deposit with the court

can have a technical meaning of payment to the court subject to the procedures of Government Code section 68084, we see no reason to infer that the legislative intent of Code of Civil Procedure section 685.030, subdivision (d)(2), was confined to public accounts of this kind.

We note, moreover, that the most reasonable alternative interpretation of Code of Civil Procedure section 685.030, subdivision (d), leads to the same conclusion by application of subdivision (d)(3). If the term "deposit with the court" were given the technical meaning of a deposit subject to Government Code section 68084, we could then reasonably construe Code of Civil Procedure section 685.030, subdivision (d)(3), as applying to a closely analogous deposit such as that at issue in the present case. In other words, if a deposit with the claims administrator were regarded as being different from a deposit with the court within the meaning of subdivision (d), it must be conceded that the deposit has the same *effect* as a deposit with the court and therefore comes within subdivision (d)(3).

For purposes of applying Code of Civil Procedure section 685.030, subdivision (d)(3), we observe that FIE relinquished any right to funds deposited in the trust account of the claims administrator. The plan of distribution provided that there could be no reversion of funds to FIE and that FIE held no residual interest in the trust fund. The only exception related to the possibility that the court might permit FIE to obtain a modification of the judgment in order to recover the difference, if any, between the award of prejudgment interest and a lesser amount of prejudgment interest that the claims administrator determines to be payable to class members. Furthermore, we note that the damages fund was held in an account in the name of the claims administrator and *class counsel.* By placing funds in such an account, FIE clearly relinquished control over the damages fund and entrusted it to payment of the judgment.

We see no merit in plaintiffs' argument that there was no irrevocable transfer of money to the class or its representatives. When FIE paid the funds to the claims administrator, the disposition of the funds was then subject to the jurisdiction of the court. Similarly, we attach no significance to the fact that class members did not hold "title" to the funds or some kind of "ownership" in the damages fund. The same can be said of funds that are paid to the court pursuant to the procedures of Government Code section 68084, which are held by the county treasurer. Under the plan of distribution, the claims administrator held the funds solely for distribution to class members, thereby creating a trust relationship in which the claims administrator acted as trustee and class members enjoyed the rights of beneficiaries. For this reason, the plan of distribution gave class counsel an important role in overseeing the distribution of damages; class counsel

possessed defined rights to information, the privilege of drafting the claims form, and the responsibility of reporting to the court and recommending appropriate methodologies.

Finally, we do not need to consider plaintiffs' speculations as to the effect the amended plan of distribution might have had on the calculation of postjudgment interest if it had been adopted in the first instance. FIE in fact petitioned the court for authorization to make payment of back wages from its payroll *after* it had placed the funds in trust for distribution to the class members. The funds were then beyond its power of disposition. Contrary to plaintiffs' contention, there was "no string attached by which the money [could] be yanked back." FIE was able to make payments directly from its own payroll only when authorized by the court. We do not need to inquire what the legal effect of paying damages from its payroll might have been if FIE had never relinquished control of the damages fund to the court.

The orders subject to appeal are affirmed.

Marchiano, P. J., and Stein, J., concurred.