Filed 8/24/20  P. v. Lexington National Ins. Corp. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LEXINGTON NATIONAL INSURANCE CORPORATION,<br><br>Defendant and Appellant. | B294515<br><br>(Los Angeles County Super. Ct. No. SJ4508) |

APPEAL from an order of the Superior Court of Los Angeles County, Maame Ewusi-Mensah Frimpong, Judge. Affirmed.

Law Offices of Brendan Pegg and Brendan Pegg for Defendant and Appellant.

Mary C. Wickham, County Counsel, Adrian G. Gragas, Assistant County Counsel, and David D. Lee, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Lexington National Insurance Corporation appeals the trial court's order denying its motion to vacate summary judgment and to exonerate a bail bond. Lexington contends the judgment is void because the superior court had previously exonerated the bond and, alternatively, because the judgment at issue had been superseded by a later judgment. We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Bond and Forfeiture*

On November 12, 2016 Lexington posted a $235,000 bail bond for the release of Monica Brown. On November 18, 2016 Brown failed to appear at a scheduled hearing, and the court ordered bail forfeited.

On November 23, 2016 the clerk of the court mailed Lexington the notice of forfeiture, advising the contractual obligation to pay the bond would become absolute on the 186th day following the date of the mailing of the notice unless forfeiture was set aside and the bond reinstated.

On June 23, 2017 the court granted Lexington's request for an extension of the appearance period to December 20, 2017.

### 2. *The Motion To Vacate Forfeiture*

On December 20, 2017 Lexington moved to vacate forfeiture. The hearing on the motion was held on January 12, 2018. The parties appeared, and the hearing was continued to February 23, 2018. However, the initial minute order for the

---

[1] An order denying a motion to set aside a summary judgment entered against a surety is an appealable order. (*County of Los Angeles v. Financial Casualty & Surety Inc.* (2018) 5 Cal.5th 309, 314.)

January 12, 2018 hearing stated the court had granted Lexington's motion and exonerated the bond. Subsequently, a minute order was entered that replaced the initial order and corrected it nunc pro tunc to state the hearing on the motion had been continued.[2]

On January 31, 2018 the People filed an opposition to Lexington's motion. On February 20, 2018 a stipulation was entered to continue the February 23, 2018 hearing to a later date. The parties appeared on February 23, 2018; and, pursuant to the stipulation, the hearing was continued to March 9, 2018.

On March 5, 2018 Lexington filed a reply in support of its motion, and on March 7, 2018 the People filed a surreply.

The parties appeared on March 9, 2018 at which time the court denied the motion to vacate forfeiture.

Despite the denial of the motion to vacate forfeiture, on March 13, 2018 the clerk of the court mailed a certificate of discharge to Lexington stating the bond had been exonerated on January 12, 2018.

3. *The Entry of Summary Judgment*

On April 5, 2018 the superior court signed a form judgment in the amount of $235,000 in favor of the People of the State of California against Lexington. The judgment does not indicate the date on which it was entered.

On April 6, 2018 the clerk of the court mailed to Lexington a notice of entry of judgment, which stated judgment had been entered in the case on April 5, 2018. In addition to Lexington,

---

[2] The record does not reflect the date the corrected minute order was entered; it appears to have been between March 13, 2018 and April 2, 2018.

the notice was erroneously mailed to the wrong bail agent. On May 4, 2018 the clerk of the court entered a minute order stating, "Due to clerical error, amended notice of entry of summary judgment was sent to all involved parties. Notice [had been] sent to [the incorrect bail agent]. Correction has been made." The corresponding notice had the word "Amended" handwritten in the body of the notice and stated judgment had been entered on April 24, 2018. The notice was otherwise identical to the previous notice: It stated it had been filed and entered on April 5, 2018 and mailed on April 6, 2018.

On June 22, 2018 the clerk mailed another notice of entry of judgment to Lexington. This notice was captioned "Amended Clerks Notice of Entry of Judgment on Forfeited Bond and Demand for Payment Reflecting the Correct Judgment Date of 04/05/18." The notice stated it had been filed and entered on April 5, 2018 and mailed on June 22, 2018. It listed April 5, 2018 as the "Amended Date Judgment Entered." The docket does not contain a corresponding entry for mailing of this amended notice.

> 4. *Lexington's Motion To Vacate Summary Judgment and for Exoneration of Bail*

On August 17, 2018 Lexington moved to vacate summary judgment and exonerate the bail bond. Lexington argued the January 12, 2018 minute order stating the bond had been exonerated was binding despite the nunc pro tunc correction. Accordingly, it argued, the court could not have entered summary judgment on a previously exonerated bond. Lexington also argued the first amended notice of entry of judgment indicated a judgment had been entered on April 24, 2018, which superseded the April 5, 2018 judgment. Because the later judgment had

4

been "lost, misplaced, or found not to exist," it could not be enforced.

The People opposed the motion, asserting the January 12, 2018 exoneration of bond and the incorrect notices of entry were clerical errors, which the superior court was entitled to correct at a later date.  Along with its motion the People submitted a copy of a form the People's counsel declared he had retrieved from the file for this case kept in the bail bond clerk's office.  The form is titled "Case Action Summary (Bond Motion Calendar)."  The form indicates the case was called on January 12, 2018; and it contains the handwritten notation, "cont'd to 2/23/18 [¶] notice waived."

At a hearing on October 19, 2018 the trial court denied Lexington's motion.

## DISCUSSION

1. *Governing Law and Standard of Review*

A bail bond ""is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond."" (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42.)  When a person for whom a bail bond has been posted and against whom a criminal complaint has been filed fails without sufficient excuse to appear as required, the court must declare the bail forfeited.  (Pen. Code, § 1305, subd. (a);[3] see *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309, 312; *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.)

---

[3]     Statutory references are to this code.

Once forfeiture is declared, the surety that posted the bond has a period of 180 days (plus five days for mailing) after the clerk of the court mails a notice of forfeiture to move to vacate forfeiture and exonerate the bond.  (§ 1305, subd. (c)(1); *People v. American Contractors Indemnity Co*., *supra*, 33 Cal.4th at p. 657.)

Upon a showing of good cause, the court may extend this appearance period by no more than 180 days from the date the trial court orders the extension.  (§ 1305.4; *People v. Financial Casualty & Surety, Inc., supra*, 2 Cal.5th at p. 44.)  If the forfeiture has not been set aside by the end of the appearance period, inclusive of any extension, "the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound."  (§ 1306, subd. (a).)

The superior court's order granting or denying a motion to vacate the forfeiture of a bail bond is ordinarily reviewed for an abuse of discretion.  (*People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 804.)  When there are factual disputes, the trial court's findings of fact will be upheld under the abuse of discretion standard when those findings are supported by substantial evidence.  (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 555.)  When the facts are undisputed and the matter raised is a question of statutory construction, our review is de novo.  (*County of Los Angeles v. Financial Casualty & Surety, Inc., supra*, 5 Cal.5th at p. 314.)  We must strictly construe the applicable forfeiture statutes in favor of the surety to avoid the "harsh results" of forfeiture.  (*People v. International Fidelity Ins. Co.* (2018) 20 Cal.App.5th 345, 354; *The North River Ins. Co.*, at p. 804.)

6

## 2. *The Court Did Not Err by Denying Lexington's Motion To Set Aside the Summary Judgment*

Lexington argues on appeal, as it did in the trial court, that the court was bound by the January 12, 2018 minute order and, alternatively, that the amended notice of entry of judgment reflected an April 24, 2018 order, which necessarily superseded the April 5, 2018 order. Both arguments are based on the premise the January 12 minute order and amended notice were judicial errors that must be enforced rather than clerical errors capable of correction.

A court has the inherent power, "regardless of lapse of time, to correct clerical errors whether made by the court, clerk or counsel so that its records will conform to and speak the truth." (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 506; accord, *People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 77-78; *In re Marriage of Kaufman* (1980) 101 Cal.App.3d 147, 151.) "While a court has power to set aside judgments and orders inadvertently made which are not actually the result of the exercise of judgment, it has no power, having once made its decision after regular submission, to set aside or amend judicial error except under appropriate statutory procedure." (*Bastajian v. Brown* (1941) 19 Cal.2d 209, 214; accord, *Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138, 1144 ["It is elementary that '[a] court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a *nunc pro tunc* order. [Citation.] It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made'"].)

"The test which distinguishes clerical error from possible judicial error is simply whether the challenged portion of the

7

judgment was entered inadvertently (which is clerical error) versus advertently (which might be judicial error, but is not clerical error).  [Citation.]  Unless the challenged portion of the judgment was entered inadvertently, it cannot be changed post judgment under the guise of correction of clerical error."  (*Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 117; see also *Bowden v. Green* (1982) 128 Cal.App.3d 65, 71 ["[a] clerical error in a judgment is an inadvertent one made by the court which cannot reasonably be attributed to the exercise of judicial consideration or discretion"].)  Accordingly, error is clerical "[w]hen a signed judgment does not reflect the express judicial intention of the court."  (*In re Marriage of Kaufman, supra*, 101 Cal.App.3d at p. 151; see also *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890 ["'[t]he question presented to the court on a hearing of a motion for a nunc pro tunc order is:  What order was in fact made at the time by the trial judge?'"].)

Lexington cites nothing in the record to support its contention the January 12, 2018 exoneration of bond was an exercise of judicial discretion.  Nor has it offered any legal basis upon which the bond could have been exonerated.  Further, Lexington, represented by counsel at the January 12, 2018 hearing, does not dispute the matter was simply continued during that hearing.  Lexington, in fact, admitted as much in its motion to vacate summary judgment;  and its counsel stated during the hearing that his "reaction was to assume [the exoneration of bail] was a mistake."  Regardless, Lexington argues it is entitled to the presumption the minute order of January 12, 2018 is correct and, quoting *People v. Surety Ins. Co.*

8

(1973) 34 Cal.App.3d 444, 447, asserts a "surety should be able to rely on the entries in the clerk's minutes."

Lexington is correct that "the general rule is that, faced with a silent record, an appellate court will presume that the trial court performed its duty and acted in the lawful exercise of its jurisdiction." (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 715.) Here, however, the record is not silent. Between entry of the initial January 12, 2018 minute order purportedly exonerating the bond and the time Lexington states it learned of the purported exoneration on March 12, 2018, the parties filed multiple briefs, including Lexington's reply brief, filed a stipulation to continue a hearing and appeared twice before the same judge who had purportedly entered the exoneration.

This record is inconsistent with an inference the exoneration in the initial January 12, 2018 minute order was the product of express judicial intention. Had the court purposefully exonerated the bond, it would be nonsensical for it to continue to receive briefing, hold multiple hearings and ultimately contradict itself by denying the requested relief. This conclusion is reinforced by the handwritten notes of the January 12, 2018 hearing in the clerk's case file stating the matter has been continued. The only reasonable interpretation of this sequence of events is that the first January 12, 2018 minute order was entered inadvertently.[4] (Cf. *Bowden v. Green* (1982) 128 Cal.App.3d 65, 71 [whether an error is judicial or clerical is

---

[4] The clerk's issuance of a certificate of discharge does not change this analysis. Lexington has not argued the issuance was anything other than a ministerial act performed by the clerk based on the erroneous minute order.

9

an issue of "'the judge's intent, and the best evidence is the judge's own statement, either express or implied from the order of correction'"].)  In sum, substantial evidence supports the conclusion the minute order stating the bond had been exonerated was an inadvertent clerical error that could be corrected at a later date.  (See *People v. Aegis Security Ins. Co.* (2005) 127 Cal.App.4th 569, 573 [when reporter's transcript indicated bail bond had been forfeited but minute order stated bond would be forfeited at a later date, "[s]uch a discrepancy amounts to a clerical error that may be corrected nunc pro tunc on the court's own motion or at the request of a party"]; *Ames v. Paley* (2001) 89 Cal.App.4th 668, 674 ["because the trial court intended to enter judgment pursuant to the settlement agreement, to the extent the judgment failed to conform to the terms of the settlement agreement, the trial court retained the inherent power to correct the judgment nunc pro tunc some three months after entry of the judgment"]; *County of Orange v. Allied Fidelity Ins. Co.* (1984) 161 Cal.App.3d 510, 512 [vacating summary judgment entered after court had mistakenly failed to set aside bond forfeiture].)

Likewise, the incorrect dates contained in the notices of entry of judgment sent to Lexington were clerical errors that were properly corrected.  Lexington has cited no evidence or authority supporting its argument that the mention of an April 24, 2018 judgment in one of the notices necessarily means such a judgment exists.  The only reasonable conclusion given the totality of the circumstances is that the date was a clerical error.

## DISPOSITION

The order denying Lexington's motion to vacate summary judgment and to exonerate the bond is affirmed.  The People are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

DILLON, J.*

---

*    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.