Filed 2/28/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARK A. BROWN,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA UNEMPLOYMENT<br>INSURANCE APPEALS BOARD et al.,<br><br>　　　　Defendants and Respondents. | A145487<br><br>(San Francisco City & County<br>Super. Ct. No. CPF-12-512499) |

　　　　The question in this case is a narrow one, involving the correct rate of interest to be applied after a court determines that unemployment benefits have been wrongfully withheld by the Employment Development Department (EDD) and the California Unemployment Insurance Appeals Board (Board).  Appellant Mark Brown (Brown) argues that interest should be charged at the contract rate of 10 percent from the date that each benefit payment was due, in accordance with Civil Code section 3289, subdivision (b).[1]  EDD, in contrast, asserts that the trial court correctly determined that any such interest should be calculated at the rate of 7 percent, as authorized by article XV, section 1, of the California Constitution and Government Code section 965.5, subdivisions (a) and (d).  We conclude that the trial court applied the incorrect interest rate to the wrongfully withheld benefits at issue.  Accordingly, we reverse for recalculation of interest, but affirm in all other respects.

---

　　　　[1] All further statutory references are to the Civil Code unless otherwise specified.

# I. BACKGROUND

The underlying facts of this matter are largely undisputed.[2]  Brown had worked for Bay Cities Patrol (BCP), a private security business, for almost 10 years when he was terminated on January 2, 2012, for wearing the wrong shirt to work in violation of BCP's uniform policy.  To accommodate Brown's large size, BCP had previously permitted Brown to wear same-color polo shirts that had BCP patches sewn on them, rather than a formal uniform shirt.  However, after discovering that it could order larger-size uniform shirts from its supplier, BCP purchased a number of such shirts for Brown in late 2011.  Brown wore the new uniform shirts throughout December 2011.  On January 2, 2012, however, he improperly wore the old polo-style shirt to work, leading to his termination.  According to Brown, he had grabbed the wrong shirt by mistake and offered to return home to change or cover the shirt with a jacket.  Brown's employer, in contrast, claims that Brown never mentioned that he wore the shirt by mistake, but told him only that he thought wearing the shirt wouldn't be a problem.

When Brown applied for unemployment benefits, EDD initially determined that he was eligible, stating:  "[Brown] just wore his own shirt by mistake.  [BCP] should have given him warning instead of terminating him.  [BCP] did not give opportunity to [Brown] to correct this mistake.  [He] was even ready to go back home and change his shirt.  Hence, [his action] does not constitute a willful misconduct."  After BCP appealed, however, an administrative law judge concluded that Brown had "willfully breach[ed] his duty and obligation to the employer" by wearing the wrong shirt and thus reversed EDD's initial eligibility determination.  Brown subsequently appealed this denial of benefits, but the Board affirmed it.

Thereafter, in September 2012, Brown filed a petition for writ of administrative mandate, seeking to set aside the Board's eligibility determination and arguing that his actions in wearing the wrong shirt were insufficient to constitute misconduct for purposes

---

[2] Although not part of our record of appeal, we take judicial notice of the administrative record in these proceedings.  (Evid. Code, §§ 452, 459.)

of denying him eligibility for unemployment benefits. The trial court agreed and, in May 2013, granted Brown's writ petition, concluding that Brown had not engaged in misconduct sufficient to disqualify him from unemployment benefits because he had offered to go home and change shirts and he was terminated on the first instance that he had violated his employer's new uniform policy. As a consequence of this determination, the trial court issued a peremptory writ of administrative mandate commanding EDD and the Board to "immediately" award Brown "the unemployment insurance benefits that were withheld in the administrative proceedings in this matter plus interest on those benefits" (Writ).

In August 2013, EDD filed a return to the Writ, stating that the Board had swiftly reversed its prior eligibility determination and that EDD had subsequently paid Brown "all the benefits for which he has been found eligible . . . ." EDD further noted, however, that it was requiring Brown to submit benefit certification forms for the weeks related to the past-due benefits and that an eligibility issue had arisen with respect to a particular three-week period that would need to be resolved before further benefits could be paid or certification forms sent for any additional weeks. It claimed that it would continue to pay Brown "for the weeks that [he] is eligible and for which he submits the required certification claim forms demonstrating his continued eligibility for unemployment benefits."

Over a year later, in October 2014, Brown filed a motion to enforce the Writ, claiming that EDD had unilaterally imposed improper conditions on the payment of benefits pursuant to the Writ, had caused extended delays, and had continued to withhold benefits and interest without justification. For example, despite several requests from Brown's attorney that EDD meet and confer regarding the amount of unpaid benefits as required by the trial court, EDD did not respond. At one point, EDD bypassed Brown's attorney and contacted Brown directly regarding an eligibility dispute. Thereafter, it insisted that Brown attend a " 'mandatory reemployment assessment appointment' " or face indefinite disqualification for benefits and asked numerous questions about Brown's continuing efforts to obtain employment, despite the fact that Brown's current

3

employability was irrelevant to the payment of the past-due benefits.  And, at the time he filed his enforcement action—14 months after the issuance of the Writ—EDD had, by Brown's calculation, still failed to pay all amounts owed to Brown.  In addition to full enforcement, Brown sought attorney's fees under Government Code section 800 as well as imposition of a fine and sanctions pursuant to Code of Civil Procedure sections 177.5 and 1097 based on EDD's continued unjustifiable conduct.[3]

In April 2015, the trial court issued its order granting in part and denying in part Brown's motion to enforce the Writ (Enforcement Order).  Specifically, the court concluded that EDD did not "reasonably compl[y]" with the Writ both by unilaterally demanding that Brown "retroactively fill out bi-weekly certifications for the entire period" before paying him the past-due benefits and by refusing to meet and confer with Brown's attorney as ordered.  Moreover, because EDD's failure to comply was "without good cause or substantial justification," the court levied a $1,000 fine against EDD under Code of Civil Procedure section 1097 and awarded reasonable attorney fees to Brown up to the $7,500 maximum authorized by Government Code section 800.

In contrast, the court determined that the correct rate of interest for wrongfully withheld unemployment benefits was not the 10-percent contract rate, as Brown argued, but was instead 7 percent, the "generic interest rate on judgments" suggested by EDD.  Prior to the instant enforcement action, however, EDD had conceded that the appropriate rate of interest was the 10-percent contract rate, and had paid interest to Brown based on that rate.[4]  It therefore claimed that it had actually overpaid Brown.  Under these

---

[3] Government Code section 800 allows a litigant who successfully challenges a public agency's determination to recover attorney fees up to $7,500 "if the litigant demonstrates that the agency acted in an arbitrary or capricious manner."  (*Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249, 255; see Gov. Code, § 800.)  Code of Civil Procedure section 1097 further provides that where a party subject to a writ of mandate "has, without just excuse, refused or neglected to obey the writ, the court may, upon motion, impose a fine not exceeding one thousand dollars."

[4] Specifically, EDD had instructed its staff:  "Please issue interest on unpaid benefits for the claimant (Mark A. Brown) from the time benefits were due (week ending

4

circumstances, the trial court ordered EDD to "immediately pay any unpaid amount to [Brown] less overpayments, if any." However, it further declared that this provision "not be construed to reduce the amount of attorney fees or to require [Brown] to repay any sum."

Brown's timely notice of appeal from the Enforcement Order now brings the matter before this court.

## II.  DISCUSSION

### A.     *Standard of Review*

We recently described the correct standard of review with respect to an order enforcing a writ of mandate as follows:  In such proceedings, the validity of the underlying writ is not before us. (*Robles v. Employment Development Dept.* (2015) 236 Cal.App.4th 530, 546 (*Robles II*).)  Rather, "we review the trial court's [e]nforcement [o]rder entered pursuant to section 1097 of the Code of Civil Procedure.  That statute provides that if a writ is issued and persistently disobeyed, the court 'may make any orders necessary and proper for the complete enforcement of the writ.'  [Citations.] Under such circumstances, at issue is whether the trial court erred either in concluding that EDD had failed to comply with the [w]rit or in fashioning the specifics of its [e]nforcement [o]rder.  Thus, our focus is on EDD's response to the [w]rit and the trial court's assessment of that response.  [Citation.]  Throughout this analysis, we will, of course, consider issues of statutory interpretation de novo."  (*Ibid.*)  One such issue subject to our de novo review is the question of the appropriate interest rate to apply, both prejudgment and postjudgment.  (*City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1477 (*City of Clovis*).)

In addition, when analyzing the issues before us, we are cognizant of the fact that " '[t]he fundamental purpose of California's Unemployment Insurance Code is to reduce the hardship of unemployment . . . .' " (*Robles II*, *supra*, 236 Cal.App.4th at p. 545.)  In

---

date) until paid in 2013.  Interest is payable at the statutory rate of 10% (Civil Code Sections 3287 and 3289)."

5

this regard, "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program." (*Id.* at p. 546.)  Thus, on appeal, we liberally construe the Unemployment Insurance Code "to advance the legislative objective of reducing the hardship of unemployment." (*Robles v. Employment Development Dept.* (2012) 207 Cal.App.4th 1029, 1034 (*Robles I*).)

**B.     *Interest Payable on Wrongly Denied Unemployment Benefits***

We begin by delineating the aspects of this dispute to which clear rules apply. First, it is beyond dispute that EDD was required to pay prejudgment interest on the unemployment benefits that it erroneously refused to pay to Brown, pursuant to section 3287, subdivision (a).  (See *Aguilar v. Unemployment Ins. Appeals Bd.* (1990) 223 Cal.App.3d 239, 240, 245–246 (*Aguilar*); see also *Robles I*, *supra*, 207 Cal.App.4th at pp. 1036–1037 [citing cases].)  Prejudgment interest is awardable in a mandamus action involving the improper denial of unemployment benefits "because the requirements for the additional award of interest are met once the court determines the Board wrongfully denied benefits.  In order to recover section 3287(a) interest in the mandamus action, the claimant must show: (1) an underlying monetary obligation, (2) damages which are certain or capable of being made certain by calculation, and (3) a right to recovery that vests on a particular day.  [Citation.]  The rationale for the mandamus interest award is that a claimant who is wrongfully denied unemployment insurance benefits by the Board must receive compensation for the egregious *delay* in receiving benefits caused by the necessity of filing a mandamus action challenging the Board's denial." (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1022 (*AFL*); see also *id*. at p. 1032 ["once a court in a mandamus action determines the Board has wrongfully withheld unemployment insurance compensation, the claimants who appealed the Board's action may also recover section 3287(a) prejudgment interest as an element of the damages awarded on judicial review"].)

When calculating such prejudgment interest, " 'each payment of benefits . . . should be viewed as vesting on the date it becomes due.' " (*Aguilar*, *supra*, 223

6

Cal.App.3d at pp. 245–246, quoting *Tripp v. Swoap* (1976) 17 Cal.3d 671, 683, overruled on other grounds as stated in *Fink v. Prod* (1982) 31 Cal.3d 166, 180 [applying same process in the context of wrongfully withheld welfare benefits]; see also *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1115; *Olson v. Cory* (1983) 35 Cal.3d 390, 402 ["[i]nterest is recoverable on each salary . . . payment from the date it fell due"].)  Moreover, as Brown asserts and as EDD actually conceded below, any payments made by EDD to Brown with respect to the benefits and interest owed applied first to any accrued interest and then to the paying down of principal.  (*Big Bear Properties, Inc. v. Gherman* (1979) 95 Cal.App.3d 908, 915 (*Big Bear*) ["[p]artial payment of an interest-bearing obligation after maturity must be applied first to discharge the accrued interest after which, if the payment exceeds the interest, the surplus is applied to discharge the principal; any portion of the principal remaining unpaid continues to draw interest"]; *McConnell v. Pacific Mutual Life Ins. Co.* (1962) 205 Cal.App.2d 469, 483–484 [noting that this has been the prevailing rule throughout the United States and that it applies "whether interest arises from an express contract or as damages"]; see also *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 139, citing *Big Bear*; Code Civ. Proc., § 695.220.)[5]

Finally, "[a]bsent a statutory provision specifically governing the type of claim at issue, the prejudgment interest rate is 7 percent under article XV, section 1 of the California Constitution."  (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 573; *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 774–775 [finding 10 percent interest excessive because, where the right to reimbursement from the Department of Health Services was "not based on contract, the rate of prejudgment interest should be that fixed by article XV, section 1 of the California Constitution; namely, 7 percent per annum"].)  This is not, however, the 7 percent

---

[5] This is not—as EDD now incorrectly asserts on appeal—an improper compounding of interest.  Rather, it is simply a rule acknowledging that interest is owed with respect to any additional *principal* still outstanding after payments are received and correctly applied.  It is thus not a claim that interest should be paid on interest.

7

*post*judgment interest also allowable under that same constitutional provision, as EDD maintains on appeal and argued below.  Rather, it is the default *pre*judgment interest rate provided for forbearance in the payment of money.  (See *Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138, 1142 (*Bell*).)  Thus, the only question remaining with respect to prejudgment interest is whether section 3289, subdivision (b)—which sets a prejudgment interest rate of 10 percent for contracts which fail to "stipulate a legal rate of interest"—is applicable in the unemployment insurance context and supplies a statutory exception to the default rate of 7 percent.[6]

We conclude that a former employee's right to unemployment benefits is sufficiently tied to his or her employment contract to justify imposition of prejudgment interest at the contractual rate of 10 percent.  " 'To finance state unemployment and disability benefits, California requires contributions from both employers and employees.  Generally, employers must annually contribute to the unemployment fund based on wages paid to their employees.' " (*West Hollywood Community Health & Fitness Center v. California Unemployment Ins. Appeals Bd.* (2014) 232 Cal.App.4th 12, 17.)  In addition, "[e]mployees contribute to the disability fund based on wages received" and

---

[6] EDD argues that this interest rate dispute is moot because it has already paid Brown the maximum allowable unemployment insurance benefit to which he is entitled, as well as 10 percent interest on that benefit, and the trial court held that EDD could not recoup any overpayment.  Brown, however, does not concede that all required amounts have been paid.  In particular, as discussed above, he argues that the payments made by EDD have not been properly applied first to accrued interest as required, thereby leaving a balance due.  Under these circumstances—where further relief can potentially be granted and where the interest issues raised are likely to recur—we believe a continuing controversy exists sufficient to support reaching the merits of Brown's claim.  (See *Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479 ["[a]n appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief"]; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 867 ["[w]hen an action involves a matter of continuing public interest that is likely to recur, a court may exercise an inherent discretion to resolve that issue, even if an event occurring during the pendency of the appeal normally would render the matter moot"].)

"employers must withhold the employees' contributions from their wages." (*Hunt Building Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 219.) Thus, an employee earns the right to participate in the unemployment insurance system through his or her labor, receiving in return what is essentially a deferred employee benefit. Under such circumstances, it can be argued that, when an employee performs services for his or her employer, the unemployment insurance provisions " 'become a part of the contemplated compensation for those services and so in a sense a part of the contract of employment itself.' " (*Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 852 [discussing statutory public pension provisions]; cf. *Rivera v. Patino* (N.D.Cal. 1981) 524 F.Supp. 136, 144 (*Rivera*) [acknowledging the argument that "pension and other employee benefits are hard won at the bargaining table, at which the employers' potential liability for unemployment insurance benefits is taken into account"].)

Although not directly on point, we believe that *Bell*, *supra*, 135 Cal.App.4th 1138, lends further support to our conclusion. In that case, Division One of this District held that the 10-percent contractual prejudgment interest rate mandated by section 3289 applied to actions for statutory overtime pay. (*Bell*, *supra*, 135 Cal.App.4th at pp. 1145–1150.) In particular, the *Bell* court opined that " '[t]he contract of employment must be held to have been made in the light of, and to have incorporated, the provisions of existing law.' " (*Id.* at p. 1147.) Thus, a violation of such statutory provisions creates a right of action for breach of the employment contract. (*Ibid.*) Of course, in *Bell* the statute at issue created a debt owed to the employee by the employer, rather than the state. However, where, as here, the state has voluntarily inserted itself into the employer-employee relationship through provision of an employment-based benefit, we believe a similar analysis is appropriate.

*Bell* is also useful for its conclusion that section 218.6 of the Labor Code was declarative of existing law—specifically, section 3289. (*Bell*, *supra*, 135 Cal.App.4th at pp. 1145–1150.) Labor Code section 218.6 was enacted in 2000 and provides that "[i]n any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the

Civil Code, which shall accrue from the date that the wages were due and payable . . . ." For purposes of this statute, "wages" is defined as "all amounts for labor performed by employees of every description . . . ." (Lab. Code, § 200, subd. (a).) Moreover, "[c]ourts have recognized that 'wages' also include those benefits to which an employee is entitled as a part of his or her compensation . . . ." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103; see also *Brown v. Superior Court* (2011) 199 Cal.App.4th 971, 994 [noting that, under the Labor Code, " '[w]ages' is a protean term"].) According to the *Bell* court, "strong and persuasive authority favored the application of Civil Code section 3289 even before it was expressly made applicable to unpaid wages with the enactment of Labor Code section 218.6." (*Bell*, *supra*, 135 Cal.App.4th at p. 1146.) Thus, *Bell* stands for the proposition that section 3289's contractual rate of interest is broadly applicable in actions involving unpaid wages and benefits.[7]

Finally, given that the prompt payment of benefits is crucial to the unemployment compensation insurance system, we believe our construction of section 3289 to include actions for the payment of wrongfully withheld unemployment benefits is consistent with the legislative objective of the Unemployment Insurance Act (Act)—reducing the hardship of unemployment. (*Robles II*, *supra*, 236 Cal.App.4th at p. 546; *Robles I*, *supra*, 207 Cal.App.4th at p. 1034.) Although EDD makes light of the importance of unemployment insurance—quipping that no one enters the employment marketplace "because one day they might be eligible for unemployment benefits"—such benefits are often crucial to the impacted employee. Indeed, a claimant's right to unemployment benefits is sufficiently fundamental and vested that the denial of such benefits is subject to independent review by trial courts in mandate proceedings. (*Cooperman v. Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1, 7 (*Cooperman*); see also *Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 108

---

[7] Since we have concluded that Brown is entitled to prejudgment interest at the rate of 10 percent pursuant to section 3289, we need not reach Brown's additional claim that he is also entitled to prejudgment interest at the rate of 10 percent under Labor Code section 218.6.

10

[noting that "a dispute about an employer's liability for unemployment benefits affects both the claimant's and the employer's 'fundamental vested rights' "].) An award of interest at the contract rate is thus consistent with both the remedial purpose of the Act and with the underlying rationale for the interest award itself—to compensate the successful claimant "for the egregious *delay* in receiving benefits . . . ." (*AFL*, *supra*, 13 Cal.4th at p. 1022.)

In reaching this conclusion, we acknowledge that in *Rivera*, *supra*, 524 F.Supp. 136—the case relied upon by the trial court below—a federal district court held that California's "unemployment insurance program does not create contract rights which are cognizable under the contract clause of the United States Constitution." (*Id.* at p. 144.) In support of this determination, the *Rivera* court correctly opined that "not every statute creating an entitlement to public benefits or creating obligations on the part of the government creates rights of a contractual nature." (*Id.* at p. 143.) It then rejected the notion that the unemployment insurance system creates such constitutionally protected rights because the law confers no right to continued benefit levels, does not reflect a bargained-for exchange between the parties involved, and does not require that employees give any consideration in exchange for their rights to benefits. (*Id.* at pp. 143–144.)

Whether we agree or disagree with the federal court's analysis and conclusions in *Rivera*, we see it as answering a different question than the one before us. We are not here concerned with whether the entire unemployment insurance system established by the state creates contract rights which are constitutionally protected from impairment, such that the legislation could not be changed to the overall detriment of vested claimants. That is a much different and broader inquiry. We hold only that once a court has determined that such a claimant was wrongfully denied unemployment insurance benefits in a liquidated amount under existing law, that claimant's right to those benefits is sufficiently tied to his or her contract of employment to support a grant of prejudgment interest at the contractual rate of 10 percent. As one court succinctly put it when discussing the fundamental and vested nature of such a right: "Once a claimant meets the

11

requirements of the act, he [or she] is entitled to a certain sum of money." (*Cooperman*, *supra*, 49 Cal.App.3d at p. 7.)  Thus, our holding is a narrow one—that, under the circumstances described above, EDD's statutory obligations under the Act are in the nature of a contractually enforceable promise which should be subject to the statutory contractual rate of prejudgment interest when breached.

Before we leave our interest rate discussion, however, we must further determine if and when Brown's right to prejudgment interest was superseded by a judgment and therefore converted to a right to receive postjudgment interest.  (See § 3289, subd. (a) ["[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation"]; *Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 538–539 [the contract rate under section 3289 applies only until the contract is superseded by a judgment].)  After that time, postjudgment interest accrues on any unpaid principal *and* interest.  (*Big Bear*, *supra*, 95 Cal.App.3d at pp. 914-915 [" '[I]t has generally been held that a judgment bears interest on the whole amount thereof, although such amount is made up partly of interest on the original obligation, and even though the interest is separately stated in the judgment.  *This rule is not affected by statutes which prohibit the allowance of compound interest . . . .*' "]; see also *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, 895 ["[a]nother common situation in which interest on interest is allowed is when prejudgment interest is incorporated in a judgment which then bears interest"].)

Pursuant to subdivisions (a) and (c) of section 965.5 of the Government Code, interest on a "judgment for the payment of money against the state or a state agency" commences to accrue "180 days from the date of the final judgment or settlement."  The rate is the constitutional rate of 7 percent.  (See Cal. Const., art. XV, § 1 ["[i]n the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum"]; see also *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 352–353; *311 South Spring Street Co. v. Department of General Services* (2009) 178 Cal.App.4th 1009, 1013,

fn. 1, 1015 [pursuant to section 965.5 of the Government Code, the State is exempt from the 10-percent postjudgment interest rate set forth in Code of Civil Procedure section 685.010, and is therefore subject to the constitutional postjudgment rate of 7 percent]; *San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 149–152 [similar result in mandate action seeking backpay].)[8]  The controversy here involves whether the trial court ever issued a judgment in this case sufficient to trigger the application of these postjudgment rules.

We conclude that, for purposes of determining when Brown's right to prejudgment interest must give way to his entitlement to postjudgment interest, the trial court's Writ and related order, issued on May 23, 2013, are the relevant judgment in these proceedings.  Pursuant to subdivision (f) of Code of Civil Procedure section 1094.5, a court in an administrative mandamus proceeding "shall enter *judgment* either commanding respondent to set aside the order or decision, or denying the writ" (italics added).  Moreover, Code of Civil Procedure section 1095 provides that "[i]f judgment be given for the applicant, the applicant may recover the damages which . . .may be enforced in the manner provided for money judgments generally."  Thus, although further efforts at enforcement may subsequently have been required in this case, the Writ and related order were "the final determination of the rights of the parties" and therefore a judgment. (Code Civ. Proc., § 577.)  Indeed, and his assertion to the contrary notwithstanding, the very fact that Brown's damages were, at that point, "capable of being made certain by calculation" is precisely why he was entitled to prejudgment interest pursuant to section 3287, subdivision (a).

---

[8] While, as asserted by EDD, recent amendments to section 3287 and Government Code section 965.5—establishing an interest rate potentially significantly lower than the generic 7-percent postjudgment rate for "interest on a tax or fee judgment for the payment of moneys against the state"—may very well evince a trend towards lower interest rates where the State is a litigant, they are completely irrelevant here, as these proceedings do not involve payment of either a "tax" or a "fee."  (See § 3287, subd. (c) [setting interest "at a rate equal to the weekly average one year constant maturity United States Treasury yield," but not to exceed 7 percent per annum]; Gov. Code, § 965.5, subd. (d) [same]; see generally *City of Clovis, supra,* 222 Cal.App.4th 1469.)

It is clear that the trial court below did not consider the many different ways in which various rates of interest must be applied in this case in order to determine whether Brown has been properly awarded the "unemployment insurance benefits that were withheld in the administrative proceedings in this matter plus interest on those benefits" as mandated by the Writ. We therefore reverse the Enforcement Order solely with regards to its discussion of the interest payable on the benefits at issue and remand the matter so that further enforcement of the Writ can occur if, and only if, additional amounts are due to Brown which remain unpaid under our analysis. Should EDD at this point finally agree to meet and confer regarding any amounts due, the matter may perhaps be able to be resolved without further court order.[9]

## C.     *Due Process*

As a final matter, Brown urges us to conclude that EDD's conduct in requiring retroactive certification of complicated work search requirements as a precondition to payment of the wrongfully withheld benefits at issue violated due process. Although the trial court did not reach this constitutional claim, Brown asks us to declare a due process violation based on his assumption that—without our intervention—EDD will routinely continue to impose these invalid conditions on others who successfully obtain writs of mandate. EDD, in contrast, argues that no live controversy exists here implicating due process, as Brown complied with EDD's certification requirements and was paid with interest.

It is true that this situation is somewhat distinguishable from that presented in *Robles II* in that EDD did ultimately pay the bulk of the benefits and interest due to Brown prior to the court's Enforcement Order. Further—and importantly from a due process standpoint—EDD appears in this case to have accepted as sufficient retroactive certifications in which Brown indicated that he did not recall the specifics of his work

---

[9] Given our resolution of this appeal, we deny EDD's request for judicial notice, filed on May 18, 2016, as the materials proffered are irrelevant to our decision.

14

search efforts.[10] Thus, Brown was able to certify that he was unemployed during the relevant timeframe and yet was able, available, and actively seeking work, without being required to recall the details of his past efforts as a prerequisite to the payment of benefits. (Cf. *Robles II*, *supra*, 236 Cal.App.4th at pp. 549–551.)

On the other hand, it is beyond dispute that the process chosen by EDD in this case did not lead to "immediate" payment of the improperly withheld benefits, a fact recognized by the trial court when it fined the agency for failure to reasonably comply with the Writ. Most troubling, in our view, were EDD's repeated refusal to meet and confer, its attempt to contact Brown directly rather than through his attorney, and its focus on irrelevant information related to Brown's current employment situation. Nevertheless, while we certainly do not condone the process here employed by EDD, the agency has since had the benefit of our decision in *Robles II* and has been subject to fines both in that case and in the present matter based on its utter failure to effect the immediate payment of the wrongfully withheld benefits at issue. (See *Robles II*, *supra*, 236 Cal.App.4th at p. 545.) Under such circumstances, we will not assume that EDD will continue in the future to refuse to meet and confer or otherwise fail to adopt a more rational and streamlined certification and payment process for use in situations where other claimants successfully obtain writs of mandate. We thus decline Brown's invitation to reach his due process argument in the context of this case.

---

[10] Brown's attorney declared below that, during the certification process, Brown informed him "that he had made numerous applications, but he had not previously been notified regarding the new instructions and did not keep records or recall the information that EDD was requiring." On his attorney's advice, Brown "therefore wrote 'I do not recall' on the certified claim forms where he truthfully did not recall." EDD eventually paid all of the claims related to these certifications.

15

## III.  DISPOSITION

The Enforcement Order is affirmed other than with respect to the calculation of interest, and the matter is remanded to the trial court for further enforcement of the Writ as may be necessary, consistent with the terms of this opinion.  Brown is entitled to his costs on appeal.

_____
REARDON, J.


We concur:


_____
RUVOLO, P. J.


_____
STREETER, J.


A145487 *Brown v. California Unemployment*

17

A145487/Brown v. Cal. Unemp. Ins. Appeals Bd.

Trial Court:    San Francisco City & County Superior Court

Trial Judge:   Ernest H. Goldsmith, J.

Counsel:        Garfinkle Law Office, Garfinkle Law Firm, Gary S. Garfinkle and Maria J.
                Garfinkle for Plaintiff and Appellant.

                Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior
                Assistant Attorney General, Susan M. Carson and Cheryl L. Feiner,
                Supervising Deputy Attorneys General, Dane C. Barca, Deputy
                Attorney General, for Defendants and Respondents.