Filed 6/18/26  Jackson v. Bd. of Civil Service Commissioners of the City of L.A. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NATHAN JACKSON<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BOARD OF CIVIL SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES,<br><br>    Defendant and Respondent;<br><br>CITY OF LOS ANGELES,<br><br>    Real Party in Interest and Respondent. | B349636<br><br>(Los Angeles County Super. Ct. No. 22STCP01670) |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Nathan Jackson, in pro per., for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Vivienne A. Swanigan, Assistant City Attorney, Travis T. Hall, Deputy City Attorney, for Respondents Board of Civil Service Commissioners and City of Los Angeles.

## INTRODUCTION

In May 2019 Nathan Jackson's former employer, the Los Angeles Police Department, suspended him for 10 days. Jackson, a detention officer, returned to work after his suspension, but 45 days later, the Department discharged him.

Jackson appealed his suspension through an administrative grievance process that culminated in the Board of Civil Service Commissioners of the City of Los Angeles affirming his suspension. Jackson filed a petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5)[1] to direct the Board to set aside its decision and award him back pay[2] on the ground that, among other reasons, the Department suspended him in violation of his due process rights under *Skelly v. State*

---

[1]    Statutory references are to the Code of Civil Procedure.

[2]    In employment cases involving civil service employees, back pay "'refers to the amount that plaintiff would have earned but for the employer's unlawful conduct, minus the amount that plaintiff did earn or could have earned if he or she had mitigated the loss by seeking or securing other comparable employment.'" (*Lowe v. California Resources Agency* (1991) 1 Cal.App.4th 1140, 1144, fn. 3.)

*Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*).[3] The trial court granted the petition in part and issued a writ directing the Board to determine, among other things, whether the Department violated *Skelly* and, if so, to calculate any back pay award. Jackson appealed, but we dismissed his appeal because the judgment was not appealable. (*Jackson v. Board of Civil Service Commissioners of the City of Los Angeles* (2024) 99 Cal.App.5th 648, 651 (*Jackson I*).)

After this court issued its remittitur the trial court issued another writ directing the Board to take essentially the same actions the court previously ordered the Board to take and to file a return. In May 2025 the Board reconsidered the allegations against Jackson, found the Department violated Jackson's rights under *Skelly*, sustained three of the four counts, and concluded the sustained allegations supported the 10-day suspension.

Three months after the Board's decision, Jackson filed a motion under section 1097 for an order to enforce the writ. The trial court granted the motion in part, ordering the Board to pay Jackson 10 days of back pay within 20 days. Jackson appealed again, arguing (again, among other things) the court erred in calculating his back pay award because, in Jackson's view, the Department owed him not 10 days of back pay, but approximately six years of back pay, from the date of his

---

[3] In *Skelly, supra*, 15 Cal.3d 194 the Supreme Court held a permanent civil service employee subject to discipline must "be accorded certain procedural rights before the discipline becomes effective," including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.)

3

suspension in 2019 through the date the Board affirmed his suspension in 2025. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Department Suspends Jackson, Jackson Returns to Work, and the Department Later Discharges Him*

In February 2019 the Department notified Jackson that it was going to suspend him for 10 days. The Department based its decision on four allegations arising out of an incident on March 18, 2018. The Department claimed that on that date Jackson (1) reported late to his duty assignment, (2) "reported to work unfit for duty," (3) left his post without authorization, and (4) refused to provide a doctor's note, as directed. In the section of the notice titled "Rationale," the Department asserted that, when Jackson reported to work on March 18, 2018, he displayed "the objective symptoms of being under the influence." The Department also asserted Jackson had "demonstrated a pattern of escalating behavior" and recommended a 10-day suspension.

After giving Jackson an opportunity to respond to the allegations, the Department notified Jackson that it had decided to suspend him for 10 days, with the suspension to begin on May 12, 2019. In its notice of suspension the Department alleged Jackson (1) reported late to his duty assignment, (2) failed to wear his official uniform while on duty (as opposed to reporting to work unfit for duty), (3) left his worksite without approval while on duty, and (4) failed to provide a doctor's note, as directed, again while on duty.

After serving his 10-day suspension Jackson returned to work. Approximately 45 days later, on July 10, 2019, the

4

Department terminated his employment. The Department discharged Jackson for misconduct arising out of incidents on June 26, 2018, June 27, 2018, and September 3, 2018: Jackson reported late to his duty assignment, "failed to work the DNA assignment as directed by a sergeant," "made false statements to a sergeant regarding his assigned duty position," and "made an improper remark to a senior detention officer."

B.    *Jackson Appeals His Suspension*

Meanwhile, Jackson appealed his suspension to the Board. Jackson contended, among other things, the Department violated his rights under *Skelly*, *supra*, 15 Cal.3d 194 because the counts the Department listed in its proposed notice of suspension did not match the counts the Department listed in its final notice of suspension. The parties presented evidence to a hearing examiner, who recommended the Board find the Department complied with the requirements under *Skelly*, sustain the four counts against Jackson, and find the 10-day suspension in May 2019 "was appropriate." In March 2022 the Board adopted the hearing examiner's recommendations.

Jackson filed a petition for writ of administrative mandate to compel the Board to set aside its decision upholding his 10-day suspension. The trial court granted the petition in part and issued a writ directing the Board to set aside its decision affirming Jackson's 10-day suspension. The court also ordered the Board to determine whether Jackson could be disciplined based on the Department's jail operations manual and, if so, reconsider the penalty "using Jackson's permissible disciplinary history"; determine whether the Department violated *Skelly* by amending the second count and, if so, "whether [Jackson] was

5

prejudiced by not being able to argue for a lesser penalty because there was no charge for a violation involving alcohol or drug usage";[4] calculate "any back pay award if *Skelly* was violated"; and (3) sustain the remaining counts.

Jackson appealed from the judgment, but we dismissed the appeal. We held the judgment was not appealable because "the superior court vacated the suspension and remanded the matter for the Board to reconsider its findings and the appropriate discipline" and because "Jackson will have an opportunity to challenge any ultimate adverse disciplinary action" regarding his suspension. (*Jackson I*, *supra*, 99 Cal.App.5th at p. 651.)

In August 2024 the trial court issued a writ of mandate ordering the Board to set aside its decision upholding Jackson's suspension and to "reconsider the case in light of the court's ruling." As relevant to this appeal, the court directed the Board to (1) determine whether Jackson could "be disciplined" for one instance of reporting late to his duty assignment based on the jail operations manual and, if the Board determined that incident did not qualify as disciplinary misconduct, "reconsider the penalty using [Jackson's] permissible disciplinary history"; (2) determine whether *Skelly* "was violated for the addition of Count 2 for failure to wear an official . . . uniform"; (3) sustain the remaining counts; and (4) file a return to the writ "within 90 days from the

---

[4] As discussed, in the notice of proposed suspension, the Department alleged in the second count that Jackson reported to work "unfit for duty," which the Department described as reporting to work displaying the objective symptoms of being under the influence, and in the notice of suspension, the Department alleged in the second count that Jackson reported to work without his official uniform.

6

date the writ is served" on the Board showing what the Board did to comply with the writ. The writ stated that, if the Board determined the Department violated *Skelly*, "the remedy is back pay from the date of discipline imposed . . . until it is upheld on administrative appeal."

On May 22, 2025 the Board decided not to sustain the allegation Jackson reported late to his duty assignment on March 18, 2018, found "the *Skelly* due process provisions were NOT met," and sustained the remaining allegations (that Jackson failed to wear his official uniform, left his worksite without approval, and failed to provide a doctor's note). The Board found the sustained allegations supported "the penalty imposed" of 10 days' suspension in May 2019.

C. *Jackson Seeks To Enforce the August 2024 Writ of Mandate*

In August 2025 Jackson filed a motion under section 1097 to enforce the trial court's August 2024 writ of mandate. Jackson argued the Board failed to (1) file a return to the writ within 90 days; (2) correct "the procedural and financial consequences of the Skelly violation it formally acknowledged on May 22, 2025"; (3) "recalculate [his] backpay in accordance with the legal effect of its Skelly violation finding and controlling case law"; and (4) "address and remedy the downstream legal consequences flowing from its own determination that [his] pre-disciplinary due process rights were violated." According to Jackson, the Board's assertion "that any backpay awarded would be capped at 10 working days" (the duration of Jackson's suspension) "directly conflict[ed] with the plain language of the writ and controlling authority."

7

The Board opposed the motion, arguing that it had filed its return to the writ (approximately one week before filing its opposition to Jackson's motion), that 10 days was "the correct calculation for backpay," and that Jackson's argument the Board "bifurcate[d]" the proceedings related to the appeal of the suspension and the appeal of the discharge was "not relevant to the issues decided by the Board on remand pursuant to the Court's writ, and fall[s] far beyond the scope of what is at [issue] in this case." The Board stated the Department was "working on issuing the appropriate backpay award."

The trial court found that, because the Board filed a (belated) return to the writ, Jackson's argument the Board did not file a return was moot. On the issue of how much back pay the Department owed Jackson because of the *Skelly* violation, the court stated that its August 2024 writ "may not be clear," but that "Jackson [was] only entitled to ten days of backpay." The court concluded the Department had to pay Jackson for the 10 days of wrongful suspension, but not for the additional days Jackson claimed (from May 27, 2019 to July 10, 2019, "when he was back on duty and receiving pay," or from July 10, 2019 to May 22, 2025, "when the Board affirmed his suspension"). The court ruled that the discharge "was a separate and independent reason for the Department not to pay Jackson" and that "the City [was] not required to pay Jackson once he was discharged." The court stated that Jackson's appeal from his suspension and his appeal from his discharge "were not bifurcated" because "they were separate appeals that ran on separate tracks" and that the Board's delay in processing Jackson's appeal from his discharge

8

"was a matter for Jackson to raise in his discharge appeal."[5] Jackson timely appealed.

### D. *Jackson Appeals His Discharge, but Withdraws His Appeal Before a Decision on the Merits*

While Jackson's appeal from the decision to suspend him for 10 days made its way through the administrative process and the courts, Jackson appealed his discharge to the Board on July 11, 2019, one day after the effective date of his discharge. On October 11, 2022, however, Jackson withdrew his appeal. The Board notified Jackson that it received his email indicating his "desire to withdraw [his] Appeal from Discharge" and that there was "nothing further before the Board on this matter." The record in this case does not include the administrative record of Jackson's appeal from his discharge.

## DISCUSSION

Jackson raises five issues on appeal. First, he argues the trial court erred in limiting his *Skelly* back pay award to 10 days, a limitation he asserts "finds no support" in "controlling California authority" or this court's decision in *Jackson I*, "all of which hold that backpay runs for the entire period of wrongful deprivation until constitutionally adequate process is afforded, less interim earnings." Second, Jackson argues the court erred in "conditioning Skelly relief on [his] withdrawal of a discharge appeal that the Board itself declined to process for years." Third,

---

[5] We do not decide whether the Board improperly delayed processing Jackson's appeal of his discharge.

9

he contends his discharge "cannot remain final" because it "was imposed during a period later determined to be constitutionally invalid and relied on predicates later rejected or materially narrowed." Fourth, Jackson asserts he is entitled to "[c]onditional reinstatement" to return "the parties to the posture required by *Skelly* before discipline may lawfully become final." And finally, Jackson claims the trial court failed to fully enforce the writ and comply with the law of the case. We will discuss the first and second arguments together, then the third and the fourth together, and finally the fifth.

### A. *The Court Did Not Err in Calculating the Back Pay Award*

#### 1. *Applicable Law and Standard of Review*

Section 1097 provides: "If a peremptory mandate has been issued and directed to an inferior tribunal, corporation, board, or person, and it appears to the court that a member of the tribunal, corporation, or board, or the person upon whom the writ has been personally served, has, without just excuse, refused or neglected to obey the writ, the court may, upon motion, impose a fine" or "make any orders necessary and proper for the complete enforcement of the writ." (See *Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1114; *Robles v. Employment Development Dept.* (2015) 236 Cal.App.4th 530, 546.) "The trial court that issues a writ of mandate retains continuing jurisdiction to make any orders necessary for complete enforcement of the writ." (*Los Angeles Internat. Charter High School v. Los Angeles United School Dist.* (2012) 209 Cal.App.4th 1348, 1355; accord, *San Diego Unified*

*Port Dist. v. California Coastal Com.* (2018) 27 Cal.App.5th 1111, 1128.)

When we review an order enforcing a writ of mandate, "the validity of the underlying writ is not before us. [Citation.] Rather, 'we review the trial court's [e]nforcement [o]rder entered pursuant to section 1097 . . . . Under such circumstances, at issue is whether the trial court erred either in concluding that [the respondent] had failed to comply with the [w]rit or in fashioning the specifics of its [e]nforcement [o]rder. Thus, our focus is on [the respondent's] response to the [w]rit and the trial court's assessment of that response.'" (*Brown v. California Unemployment Ins. Appeals Bd.*, *supra*, 20 Cal.App.5th at p. 1114; see *Robles v. Employment Development Dept.*, *supra*, 236 Cal.App.4th at p. 546.) We review de novo the amount of back pay the Department owes Jackson. (See *Roe v. State Personnel Bd.* (2004) 120 Cal.App.4th 1029, 1036 (*Roe*) [reviewing de novo "whether the [board] erred in concluding that [the plaintiff's] resignation cuts off an award of backpay . . . for the due process violation"]; see also *Brown*, at p. 1114 [reviewing de novo "the question of the appropriate interest rate to apply"].)

### 2. *Jackson Lost 10 Days of Wages from His Wrongful Suspension*

As discussed, in *Skelly*, *supra*, 15 Cal.3d 194 the Supreme Court held the employer must give the employee notice of, and the basis for, the disciplinary action; a copy of the charges and materials that support the proposed action; and an opportunity to respond to the charges. (*Id.* at p. 215.) In *Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395 (*Barber*), on which Jackson principally relies, the Supreme Court held the remedy for a

violation under *Skelly* "is to award back pay for the period of wrongful discipline." (*Id.* at p. 402.) The employer in *Barber* dismissed the plaintiff before holding a hearing on the reasons for the dismissal. (*Id.* at p. 399.) The Supreme Court stated the "constitutional infirmity of the disciplinary procedures used" by the employer "was the imposition of discipline prior to affording the employee notice of the reasons for the punitive action and an opportunity to respond." (*Id.* at p. 403.) On calculating the proper measurement of damages, the Supreme Court held that the due process violation "is not corrected until the employee has been given an opportunity to present his arguments to the authority *initially* imposing discipline" and that the "proper period for measuring the amount of back pay due therefore begins at the time discipline is actually imposed and ends on the date the board files its decision." (*Ibid.*)

In *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102 (*Coleman*), the Supreme Court distinguished *Barber* on facts analogous to the facts in Jackson's case. The plaintiff in *Coleman* did not return to work after his disability benefits ended; the employer notified the plaintiff that, under a statutory provision, "his unauthorized absence was deemed an 'automatic resignation' from state employment." (*Id.* at pp. 1109-1110.) The employer did not give the plaintiff notice or an opportunity to be heard "before the deemed resignation" took effect. (*Id.* at p. 1111.) After concluding the employer had to provide "some meaningful mechanism of procedural protections," the Supreme Court held the employee's "separation" from his employment without due process did not "warrant an award of back wages." (*Id.* at pp. 1118, 1124.) The Supreme Court explained that, in *Barber, supra,* 18 Cal.3d 395 "the employee

12

had worked until being discharged, and presumably would have continued to do so had he not been discharged, and thus had lost salary as a result of the due process violation," whereas the employee in *Coleman* "had not been reporting to work" and, because "he was not working, he lost no wages from the state's failure to give him prior notice or an opportunity to respond." (*Coleman*, at p. 1124; see *Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1133 [employee's "unavailability for work due to his nonindustrial illness justified the . . . denial of full back pay" because, "[e]ven if [his employer] had not wrongfully demoted him, [he] would not have appeared for work because of his illness," which was "unrelated to his demotion and employment"].)

Jackson lost 10 days of wages as a result of the *Skelly* violation, but no more. He served his 10-day suspension and returned to work, earning wages for 45 more days, until the Department discharged him. The reason Jackson did not work after the Department discharged him on July 10, 2019 was not because of the *Skelly* violation relating to his suspension, but because the Department discharged him, which was a separate adverse employment action unrelated to the *Skelly* violation. Because Jackson did not lose any earnings beyond 10 days of pay "as a result of" (*Coleman*, *supra*, 52 Cal.3d at p. 1124) his wrongful suspension, the trial court correctly ruled he was entitled to only 10 days of back pay. Stated another way, had the Department not discharged Jackson on July 10, 2019, he would have continued to work and earn pay through May 22, 2025, when the Board affirmed his suspension. His back pay award in that situation would still be 10 days because his interim wages would offset the wages for the period of the *Skelly* violation

13

(May 12, 2019 to May 22, 2025).  (See *Kempland v. Regents of Univ. of Cal.* (1984) 155 Cal.App.3d 644, 651 [employee discharged without due process was entitled to back pay "less interim wages earned"].)  Of course, if there were a *Skelly* violation in connection with the discharge (and we express no opinion on that possibility), Jackson might be entitled to additional days of back pay until that violation was cured.  But as we will discuss, that is not an issue in this appeal.

Jackson cites *Kempland v. Regents of Univ. of Cal.*, *supra*, 155 Cal.App.3d 644 and *Kirkpatrick v. Civil Service Com.* (1978) 77 Cal.App.3d 940 to argue he is entitled to back pay "from the date discipline was imposed until constitutionally adequate process was first afforded, here, May 22, 2025, subject to offset for interim earnings."  Like the plaintiff in *Barber*, the plaintiffs in *Kempland* and *Kirkpatrick* lost the opportunity to work (and earn wages) as a result of their employer's decision to terminate their employment.[6]  The due process violation associated with

---

6    See *Kempland v. Regents of Univ. of Cal.*, *supra*, 155 Cal.App.3d at pages 647, 651 (employee discharged without due process was "entitled to backpay from . . . the effective date of discharge to the date on which he is given a meaningful opportunity to respond to [the] notice of intention to dismiss"); *Kirkpatrick v. Civil Service Com.*, *supra*, 77 Cal.App.3d at pages 943, 946 (employee discharged without due process was "entitled to damages, measured by back pay for the period between his dismissal . . . and the decision of the commission upholding his dismissal").  Jackson also cites *Kristal v. State Personnel Bd.* (1976) 50 Cal.App.3d 230, but *Barber* disapproved *Kristal* to the extent it suggested "a termination date for measuring damage contrary to the views expressed" in *Barber*. (*Barber*, *supra*, 18 Cal.3d at p. 405.)

14

each employee's discharge caused the employee to lose wages for the duration of the violation.  Here, as discussed, it was Jackson's discharge, not the *Skelly* violation related to his suspension, that caused him to experience lost wages during most of the six-year period for which he is seeking back pay.

Nor is there merit to Jackson's contention the trial court conditioned his back pay award on him withdrawing his discharge appeal.  The court simply measured the proper back pay the Department owed Jackson.  "Backpay serves to make an employee whole for the employer's wrongdoing.  [Citations.]  An award should 'give [the employee] what he would have earned with the employer less any net earnings during the time [between] his wrongful discharge and reinstatement.'  [Citation.] [¶]  The remedy should 'return[ ] the [employee] to the financial position he would have been in had the unlawful [conduct] not occurred. . . .  [T]he offending employer is made responsible only for losses suffered by the [employee] as a result of [its misconduct] . . . .  It is manifest that . . . back pay . . . [is] . . . compensatory and remedial in purpose, not punitive.'" (*Davis v. Los Angeles Unified School Dist. Personnel Com.*, *supra*, 152 Cal.App.4th at p. 1133; see *Barber v. State Personnel Bd.* (2019) 35 Cal.App.5th 500, 513 ["'""The appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the [employer's wrongful conduct], the individual would have [held].""'"].)  The Department's decision to discharge Jackson caused him loss of earnings from the effective date of the discharge; the *Skelly* violation in connection with Jackson's suspension did not cause that loss.  The trial court correctly ruled the reason Jackson could

15

not earn wages from July 10, 2019 to May 22, 2025 was unrelated to his wrongful suspension.  The court did not make Jackson's discharge or the withdrawal of his appeal of the discharge a condition of awarding him back pay.

Analogizing his case to *Roe, supra*, 120 Cal.App.4th 1029, Jackson argues remedies for a *Skelly* violation "are not extinguished by employee actions taken while the violation remains uncured."  *Roe*, however, is distinguishable.  In that case the plaintiff received a notice from his employer dismissing him, but when the plaintiff's attorney met with the employer's *Skelly* officer,[7] the officer told the attorney that, if the plaintiff resigned by the date of the *Skelly* hearing, he could "avoid discipline."  (*Id.* at p. 1033.)  The plaintiff submitted his resignation before (and did not attend) the *Skelly* hearing, but the employer still terminated his employment.  (*Id.* at p. 1034.)  The personnel board initially affirmed the termination, but after the plaintiff's partially successful appeal, the board found the plaintiff's termination "was invalid" and awarded back pay to the date of the plaintiff's resignation.  (*Id.* at p. 1035.)  The plaintiff appealed again, and the court in *Roe* rejected the employer's argument the plaintiff's resignation and failure to contest his dismissal at the *Skelly* hearing cut off his right to back pay because, the court explained, the employer "induced" the plaintiff's resignation and subsequent failure to appear at the hearing.  (*Id.* at p. 1040.)  The court also concluded the plaintiff could no longer work, not because he resigned, but because his employer terminated his

---

[7]    A *Skelly* officer is an individual "authorized to hear the response of a permanent employee to proposed adverse employment action, pursuant to *Skelly* . . . ."  (*Roe, supra*, 120 Cal.App.4th at p. 1033, fn. 2.)

16

employment. (*Id.* at p. 1041.) There is no such connection between Jackson's suspension and his discharge. The two disciplinary actions were separate and distinct, as were Jackson's appeals of those Department decisions.[8]

Jackson argues this court's decision in *Jackson I* is the law of the case on how to calculate his back pay award. Jackson misunderstands law of the case and our holding in *Jackson I*. "'"The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case."'" (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127; accord, *Prime Healthcare Management, Inc. v. Superior Court* (2025) 117 Cal.App.5th 127, 142.) As discussed, in *Jackson I* we dismissed Jackson's appeal because the judgment was not appealable. (*Jackson I*, *supra*, 99 Cal.App.5th at p. 655.) In a footnote, we stated: "Where an employer has disciplined an employee without affording the procedural safeguards required by *Skelly*, 'the remedy for the employee . . . is to award back pay for the period of wrongful discipline.' [Citation.] The employee is generally entitled to back pay from the date of discipline to 'the date on which he is given a meaningful opportunity to respond' to the charges, 'less interim wages earned.'" (*Id.* at p. 655, fn. 7.) This statement of law was

---

8       Jackson cites two emails that he argues show the Department intentionally delayed processing the appeal of his discharge. The trial court declined to take judicial notice of these emails, which the court characterized as "party correspondence." Jackson has not asked us to take judicial notice of the emails.

17

not necessary to the decision of *Jackson I*, and we did not rely on it to conclude the judgment was not a final appealable judgment. It has no effect on this appeal. (See *Department of Finance v. Commission on State Mandates* (2022) 85 Cal.App.5th 535, 554 [law of the case doctrine does not apply to a statement in a prior appellate opinion where the statement "was not essential" to the decision].)

B. *The Trial Court Did Not Err in Declining To Consider Jackson's Arguments Related to His Discharge*

The trial court correctly ruled Jackson's arguments relating to his discharge (namely, the Board unlawfully delayed processing Jackson's discharge appeal and improperly based his discharge on his unresolved suspension) were matters for the administrative appeal of his discharge. The writ Jackson sought to enforce concerned only his suspension. As discussed, because Jackson withdrew his administrative appeal of his discharge, the Board never made a final decision, and Jackson did not exhaust his administrative remedies for that adverse employment action. The trial court did not err in declining to consider any claims related to Jackson's discharge. (See *Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 382 ["'an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures"'"]; *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 ["'Exhaustion of *administrative* remedies is "a jurisdictional prerequisite to resort to the courts."'"]; see also *Romero v. County of Kern* (2025) 116 Cal.App.5th 1189, 1201

18

[exhaustion requirement "applies to internal administrative remedies that are provided in county civil service rules"].)

C. *The Court Did Not Fail To Enforce the Writ*

Jackson argues the trial court failed to fully enforce the writ because (1) the writ directed the Board to reconsider "the penalty using only [Jackson's] permissible disciplinary history," but under "the current procedural posture . . . compliance with that directive is procedurally impossible," unless the court grants a "conditional reinstatement and remand"; (2) the writ required the Board to "implement the legal consequences flowing" from its finding of a *Skelly* violation, but the Board "failed to implement the remedial and procedural consequences required by controlling authority"; and (3) the court "accepted the Board's limited action as sufficient and treated enforcement as moot." Jackson's first argument misstates the directive in the court's writ, which only concerned his 10-day suspension, not the discharge or reinstatement. As discussed, the writ directed the Board to determine whether the Department could discipline Jackson for one incident of tardiness in March 2018; if not, the writ directed the Board to "reconsider the penalty" (the suspension) using Jackson's "permissible disciplinary history" (the disciplinary history excluding the March 2018 tardiness incident). Nothing in the writ directed the Board take any action concerning the discharge, such as vacating the discharge or reinstating him. And in any event, the proper remedy for a *Skelly* violation is back pay, not reinstatement. (See *Bedard v. City of Los Angeles* (2024) 106 Cal.App.5th 442, 460 ["*Barber* established that the only remedy for the violation of an employee's due process is back pay when her discharge is justified."]; *Williams v. City of Los Angeles*

19

(1990) 220 Cal.App.3d 1212, 1217 ["the proper remedy for a *Skelly* violation is an award of back pay for the period described in *Barber*, rather than reinstatement"].)

Regarding Jackson's second argument, the proper back pay award, as discussed, was 10 days, not more. And it is unclear what Jackson's third argument is. He appears to argue the trial court failed to ensure the Board provided the full remedy for the *Skelly* violation as "required by law." As discussed, the trial court did not err in determining the proper back pay award under the applicable authority.[9]

## DISPOSITION

The order directing the Board to award Jackson 10 days of back pay is affirmed. The Board is to recover its costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.          FEUER, J.

---

[9] Though Jackson argued in the trial court that awarding him only 10 days of back pay conflicted with the language of the writ, he does not make this argument on appeal.