Filed 4/24/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>CODEY SAGE EMRICK,<br><br>    Defendant and Appellant. | A172010<br><br>(Napa County<br>Super. Ct. No. 24CR000411) |

Defendant Codey Sage Emrick challenges a condition of his probation relating to his participation in residential rehabilitative treatment.  He argues the condition (1) violates separation of powers by delegating excessive judicial authority to the probation department; and (2) is unconstitutionally vague with regard to his entitlement to custody credits for time spent in treatment he did not successfully complete.  Although the appeal has become moot due to the termination of Emrick's probation, we exercise our discretion to reach its merits because the issues are of broad public interest that are likely to recur but evade appellate review.  We conclude the trial court delegated excessive judicial authority to the probation department, which rendered the challenged probation condition invalid.  We also observe that the condition was improperly imposed without Emrick's voluntary and knowing waiver of his right under section 2900.5 of the Penal Code[1] to receive credit for all time served in rehabilitative treatment.

---

[1]    Further unspecified statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2024, Emrick was charged by felony complaint with one count of grand theft of personal property. (§ 487, subd. (a).) In September 2024, Emrick pled no contest to the felony count, admitted probation violations in three other cases, and admitted a count of misdemeanor receipt of stolen property in another case. As part of the plea, Emrick agreed to serve 120 days in jail, subject to release to a treatment program after an alcohol and drug services assessment.

In October 2024, the probation department filed its report recommending that the trial court suspend imposition of sentence and grant Emrick formal probation for two years under various conditions. The court placed Emrick on three years' probation and imposed consecutive jail terms of 120 days as to both the felony and misdemeanor cases (with 121 days of credit in the misdemeanor case).

Among the probation conditions imposed by the trial court was condition no. 3, which stated that Emrick would "[s]erve 120 days in jail," but that the probation department had "discretion" to "release" him to a treatment program. Condition no. 23 required Emrick to "[e]nroll in, pay for, and successfully complete an outpatient or residential treatment program"; "[a]bide by all of the program's rules and regulations"; and "not leave the program without the Probation Officer's permission."

At issue here is condition no. 24, which stated: "If you do not successfully complete the treatment program, the Probation Officer, or any peace officer, may arrest you without a warrant and keep you in jail for up to 120 days, with credits, while attempting to find another treatment program for you. The Probation Officer can release you from jail for placement in another treatment program. You will not have to return to jail if you

successfully complete the program.  You will not receive any credit for time served in a residential treatment program, unless you successfully complete it."

Defense counsel objected to condition no. 24, arguing it improperly delegated judicial authority to the probation department to impose a jail sentence on Emrick without a hearing in the trial court.  The prosecutor responded, "I have seen this particular term quite often.  I think it provides the Probation Department the ability to operate in the best interest of the defendant, that sent him to treatment, and if that is not successful we continued to have that time enabled for him to be put into custody while they find a new position for him.  So I don't find that to be outside the spirit of what was agreed to between the parties."  Upon questioning from the court, the prosecutor confirmed that condition no. 24 was "in lieu of filing a VOP" (i.e., a "violation of probation" petition).  In imposing condition no. 24 over the defense's objection, the court reasoned the condition was for defendant's "benefit" because "it is in lieu of filing a petition, and so these things are done internally by Probation.  We never find out about it.  The next thing we know, someone is either back in a program or in a different program because ultimately the goal was to get the defendant services that he or she needs rather than incarcerate."

In early November 2024, the People petitioned for revocation of probation, alleging Emrick had absconded from his residential treatment program on October 23, 2024, and failed to report to the probation department.  The trial court revoked Emrick's probation and issued a bench warrant for his arrest.  Emrick was arrested on November 15, 2024.  He then filed this appeal.

3

Emrick contends condition no. 24 (1) unlawfully delegates judicial authority to the probation department to decide whether Emrick has violated his probation with regard to his performance in rehabilitative treatment; and (2) is unconstitutionally vague due to an internal inconsistency as to whether he would be credited with time spent in a treatment program he did not successfully complete. Emrick requests various modifications to the condition to address these purported deficiencies.

**A. Motions to Dismiss/Mootness**

In April 2025, the People moved to dismiss the appeal under the fugitive disentitlement doctrine, claiming Emrick had absconded from custody. In May 2025, we issued an order indicating our intention to dismiss the appeal unless Emrick returned to custody within 45 days. In June 2025, Emrick's counsel notified the court that Emrick had been booked into custody at the Napa County Jail. Accordingly, we denied the motion to dismiss.

In July 2025, the People again moved to dismiss the appeal, this time on the ground of mootness. According to the moving papers, in June 2025, the trial court terminated Emrick's probation and sentenced him to serve 16 months in jail. The People argued that since Emrick's probation had been terminated, any remand to modify condition no. 24 would have no practical effect, and thus, the appeal should be dismissed as moot. We deferred ruling on the motion pending our consideration of the merits of the appeal.

Thereafter, the People filed supplemental clerk's transcripts, and the appellate record was augmented. As augmented, the record reflects that

4

when Emrick was sentenced to jail in June 2025, the trial court awarded him custody credits for his time in uncompleted residential treatment programs.[2]

Generally, " '[a]n appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief.' " (*Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1116, fn. 6.) Because Emrick is no longer subject to the challenged probation condition and has been awarded the custody credits he claims the condition purported to deny him, there would be no practical effect of his success on appeal. (*People v. Dunley* (2016) 247 Cal.App.4th 1438, 1445 (*Dunley*) [case becomes moot when ruling "can have no practical effect" or cannot provide "effective relief"].)

Still, "[w]hen an action involves a matter of continuing public interest that is likely to recur, a court may exercise an inherent discretion to resolve that issue, even if an event occurring during the pendency of the appeal normally would render the matter moot." (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 867.) This is particularly appropriate where the duration of a challenged order is shorter than the likely duration of the appellate process. (See, e.g., *Dunley, supra,* 247 Cal.App.4th at pp. 1442–1443, 1445.)

This appeal implicates issues of public interest regarding separation of powers in the context of probation conditions and the right to custody credits. (See *In re D.N.* (2022) 14 Cal.5th 202, 211–212 (*D.N.*); *People v. Penoli* (1996)

---

[2] Specifically, the record shows that Emrick was in jail between October 3 to 23, 2024; November 15, 2024, to January 9, 2025; and May 18, 2025, to June 4, 2025, for a total of 93 days. He was in residential treatment programs between October 23 and 25, 2024; and January 9, 2025, to February 7, 2025, for a total of 30 days. The trial court awarded Emrick a total of 123 days of custody credits when it terminated his probation and sentenced him to jail in June 2025.

46 Cal.App.4th 298, 305 (*Penoli*) [discussing public interests underlying custody credits under section 2900.5].) Because the remarks made during the sentencing hearing indicate the challenged condition is commonly used in Napa County, it is likely the same issues may arise in other cases but evade appellate review given the relatively short time frames involved. For these reasons, we will exercise our discretion to reach the merits of the appeal.

## B. Excessive Delegation of Judicial Authority

" 'Trial courts are granted broad discretion under Penal Code section 1203.1 to prescribe conditions of probation.' " (*Penoli*, *supra*, 46 Cal.App.4th at p. 302.) Likewise, probation officers "have wide discretion to enforce court-ordered conditions, and directives to the probationer will not require prior court approval if they are reasonably related to previously imposed terms." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373.)

Notwithstanding such discretion, the doctrine of separation of powers (Cal. Const., art. III, § 3) bars a trial court from delegating excessive judicial authority to a nonjudicial officer. (*Penoli*, *supra*, 46 Cal.App.4th at p. 307; see, e.g., *People v. Cervantes* (1984) 154 Cal.App.3d 353, 356–358 [court may not delegate discretion to probation officer to determine propriety, amount, and manner of restitution].) "While the probation officer may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer." (*People v. Smith* (2022) 79 Cal.App.5th 897, 902, (*Smith*).) In other words, "the court's order cannot be entirely open-ended. It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1359 (*O'Neil*).)

Though the imposition of probation conditions is generally reviewed for abuse of discretion, "we review constitutional challenges to probation conditions de novo." (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.) We give the challenged condition " 'the meaning that would appear to a reasonable, objective reader' " and interpret it "in context and with the use of common sense." (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129 (*Rhinehart*).) As we explain below, condition no. 24, when read in context, is constitutionally flawed for several reasons.

As case law holds, a trial court may validly order a probationer to participate in an unspecified residential drug treatment program and leave the particulars of the program to the discretion of the probation department. (E.g., *Penoli, supra*, 46 Cal.App.4th at pp. 307–308.) But that is not what happened in this case.

As a threshold matter, although Emrick focuses his appellate challenge on condition no. 24, the People invite us to read the challenged condition in context with conditions nos. 3 and 23, which we agree is appropriate. (See *Rhinehart, supra*, 20 Cal.App.5th at p. 1129.) As discussed, condition no. 3 gave the probation department "discretion" to decide whether Emrick should receive treatment or serve a 120-day jail term, essentially giving the probation department—not the trial court—the ultimate decision on the nature of the prohibition placed on Emrick. Meanwhile, condition no. 23 appears to have authorized the probation department to decide whether Emrick must complete "an outpatient or residential treatment program." But it is well-settled that "[g]iven the significant liberty interest at stake, a court—not a probation officer—must make the decision to require a defendant to attend residential treatment." (*Smith, supra*, 79 Cal.App.5th at p. 903.) Finally, condition no. 24 allowed the probation department to place

Emrick in jail based on its determination that he did not "successfully complete" a treatment program, but the condition included no standard by which the probation department was to be guided. Conceivably, the probation department could decide to place Emrick in jail simply because he was not accepted to any treatment program, could not afford to pay for one, or could not comply due to other extenuating circumstances, with no formal process to dispute the probation department's decision. Read together, the above conditions created an open-ended process in which the probation department was not simply charged with enforcing the orders of the court, but given broad discretion to determine the very nature of the prohibitions placed on Emrick. This was an excessive delegation of judicial authority. (See *O'Neil*, *supra*, 165 Cal.App.4th at p. 1359.)

The People argue that condition no. 24 simply told the probation officer what to do if Emrick was unsuccessful in treatment, not to decide whether his failure was a probation violation. Be that as it may, the fact remains the probation department was broadly authorized to hold Emrick in jail based on its unilateral determination that he was unsuccessful in treatment. As the trial court and prosecutor made clear, condition no. 24 created a process "in lieu of" a formal petition for revocation of probation based on a violation of probation. Though the court believed this streamlined process was for Emrick's benefit, it could nevertheless result in Emrick immediately serving jail time for alleged probation violations without an opportunity to contest them in a formal proceeding. (See *People v. Gray* (2023) 15 Cal.5th 152, 164 [minimum standards of due process apply to adjudication of alleged probation violations].)

*D.N.*, *supra*, 14 Cal.5th 202, is instructive. There, the Supreme Court upheld a condition authorizing the probation department to offer a minor

8

probationer " 'up to 50 hours of community service . . . as an option to work off alleged probation violations.' " (*D.N.*, at p. 204.)  *D.N.* concluded the condition "does no more than authorize the probation officer to reach a consensual arrangement with minor for performance of community service as a means of addressing allegations of relatively insignificant, technical violations of probation.  Under that grant of authority, if minor wishes to contest an allegation that he has violated his probation or the probation officer's determination that community services hours are warranted, he is free to decline the offer. . . .  [T]he probation department would then be free to decide whether the alleged violation warrants seeking a modification of the juvenile court's probation order." (*Id.* at p. 210.)

Here, in contrast, condition no. 24 did not reflect a consensual arrangement for resolution of alleged noncompliance issues that Emrick was free to decline.  Rather, the probation department could, upon its own determination of Emrick's unsuccessful treatment completion, hold Emrick in jail while attempting to place him in another program.  This condition permitted the probation officer to "impose a sanction without [Emrick] having notice, an opportunity to be heard, or any form of judicial process," a process which *D.N.* acknowledged would "raise constitutional concerns." (*D.N.*, *supra*, 14 Cal.4th at p. 210.)

In sum, the trial court delegated to the probation department authority to make critical decisions involving far more than just the "details that invariably are necessary to implement the terms of probation." (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1358–1359.)  We conclude such delegation was excessive and constitutionally impermissible under separation of powers and due process principles.

9

## C. Vagueness and Section 2900.5

Emrick further contends condition no. 24 is unconstitutionally vague because it contains contradictory clauses concerning his entitlement to credits for time spent in uncompleted treatment programs.  The People notably do not respond to this claim.  Emrick additionally contends—and this time, the People agree—that to the extent condition no. 24 purported to deny him credit for time spent in an incomplete rehabilitative treatment program, it violated section 2900.5.  We find no vagueness but accept the People's concession on the latter point.[3]

" ' "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.' " ' " (*In re D.H.* (2016) 4 Cal.App.5th 722, 727.)

Emrick insists the first and last sentences of condition no. 24 are inconsistent as to whether he was entitled to a reduction of the 120-day jail term for any time he unsuccessfully spent in rehabilitative treatment.  As Emrick points out, the first sentence states that if the probationer does "*not* successfully complete the treatment program, the Probation Officer, or any peace officer, may arrest you without a warrant and keep you in jail for up to 120 days, *with credits*, while attempting to find another treatment program

---

[3]     Because Emrick's vagueness claim raises a question of facial constitutional validity, his failure to object on these grounds below did not result in forfeiture.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 888–889 [claim that probation condition was unconstitutionally vague and overbroad was not forfeited for failure to raise it in juvenile court].)  Though the same cannot be said for Emrick's claim of error under section 2900.5, we elect to reach the issue given the People's concession of error.

10

for you." (Italics added.) The last sentence then states, "You will not receive any credit for time served in a residential treatment program, unless you successfully complete it." Though not artfully worded, the condition is not inherently contradictory. Reasonably construed, the condition provides that a probationer will be credited for their time spent in residential rehabilitative treatment, including unsuccessful programs, *only* if the probationer *ultimately completes* a treatment program. This means the first sentence's "with credits" language was contingent on Emrick's ultimate success in a program, even if multiple attempts had to be made to find a suitable program and for Emrick to complete it.

But our resolution of the vagueness question begs a different one: whether the condition could properly deny custody credits for time spent in unsuccessful residential rehabilitative treatment. Emrick argues, and the People concede, that a knowing and voluntary waiver was required, and that the record here does not disclose Emrick's express waiver of his right to custody credits. We agree.

"In all felony and misdemeanor convictions, . . . when the defendant has been in custody, including, but not limited to, any time spent in a . . . rehabilitation facility . . . [or] similar residential institution, . . . *all* days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, . . . *shall* be credited upon his or her term of imprisonment." (§ 2900.5, subd. (a), italics added.) "[U]nder section 2900.5, time spent in a residential treatment program operates as a credit against any future confinement which might occur." (*Penoli*, *supra*, 46 Cal.App.4th at p. 302.) This custody credit applies whether or not the probationer completes the rehabilitation treatment program, unless the probationer explicitly waives

11

the right to credit for uncompleted program days.  (*Id.* at pp. 298, 303–305 [trial court's blanket rule against awarding custody credits for time spent in uncompleted rehabilitation program was abuse of discretion]; see *People v. Johnson* (2002) 28 Cal.4th 1050, 1054–1055 (*Johnson*) [defendant may expressly waive entitlement to section 2900.5 credits].)  A waiver is knowing and intelligent when it is "entered into with awareness of its consequences." (*People v. Ambrose* (1992) 7 Cal.App.4th 1917, 1922 (*Ambrose*).)

Here, the record contains no express waiver by Emrick of his right under section 2900.5 to custody credits for all days in a rehabilitative facility. (See, e.g., *Johnson, supra*, 28 Cal.4th at p. 1053 [defendant "expressly agreed to a waiver of custody credits"].)  Nor does the record contain any indication Emrick was specifically advised at sentencing that he would not be entitled to credits for his time in a rehabilitative treatment program in the event he was not successful in the program.  (See *Ambrose, supra*, 7 Cal.App.4th at p. 1923, fn. 4 [trial court told defendant " 'if you take one drink, . . . you are going to go to state prison and you don't get credits for the time you have been in custody.' "].)  In the absence of a knowing and intelligent waiver by Emrick of his section 2900.5 rights, condition no. 24 was not validly imposed.[4]

## DISPOSITION

Having decided the issues on the merits because they are likely to recur, we dismiss the appeal as moot.

---

[4]     Granted, the record reflects Emrick was eventually credited with time spent in unsuccessful rehabilitative treatment when he was sentenced in June 2025.  However, we underscore the necessity of a knowing and intelligent waiver of section 2900.5 rights given the indication in the record that condition no. 24 is commonly used in Napa County.

_____

Fujisaki, Acting P.J.

WE CONCUR:


_____

Petrou, J.


_____

Rodríguez, J.

Trial Court:        Napa County Superior Court

Trial Judge:        Hon. Elia Ortiz

Counsel:        Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General, Melissa A. Meth, Deputy Attorney General, and Andrew Haney, Deputy Attorney General, for Plaintiff and Respondent.

*People v. Emrick* (A172010)